No. 2240.

James B. McAllen v. Western Union Telegraph Company.

1. PLEADING.—When a petition in a suit to recover damages alleges generally that the plaintiff was damaged in a designated sum, and it afterwards claims a different sum as punitory damages, and a designated sum as actual damages, the general claim for damages should be stricken out on exception.

2. DAMAGES.—A wrong doer is liable in damages for all the injurious consequences of his tortious acts, which, according to the usual course of events and general experience, were likely to ensue, and which, therefore, when the act was committed, he may usually be supposed to have foreseen and anticipated. See opinion for facts illustrating the rule.

3. SAME.—When a telegraph message is sent which contains nothing to indicate apprehension of the sickness of a relative to whom it is directed, and no such information is given to the agent of the company who transmits it, the mental suffering that may be occasioned by a failure to transmit or deliver it can not be made a ground for the recovery of punitory damages.

ERROR from Cameron. Tried below before the Hon. John C. Russell.

F. E. Macmanus, for plaintiff in error, cited Williams v. Warnell, 28 Texas, 610; Warner v. Bailey, 7 Texas, 517; Prewitt v. Farris, 5 Texas, 370; Carter & Hunt v. Wallace, 2 Texas, 206; Frosh v. Swett, Id., 485; Lambeth v. Turner, 1 Texas, 464; So Relle v. W. U. Tel. Co., 55 Texas, 308; G. C. etc., Railway v. Levy, 59 Texas, 546, 547; 1 Southerland, 2; Cooley on Torts, 500, 501.)

Wheeler & Rhodes, for defendant in error.

MALTBIE, PRESIDING JUDGE. James B. McAllen brought suit against the Western Union Telegraph Company to recover damages actual and exemplary, growing out of the alleged tortious conduct of the company's agent in failing to send a telegram from San Antonio to Edinburg, in Hidalgo county. The petition contains a minute statement of all of the facts, and is subdivided into paragraphs, numbered from one to eighteen, inclusive. To this petition there is a general demur-

rer and a special demurrer to each of its subdivisions. The demurrers were all sustained, and the plaintiff declining to amend the petition, was dismissed.

It was alleged that the plaintiff being in San Antonio about August 2, 1883, applied to defendant's agents, at that place, to know whether there was a telegraph office at Edinburg open for business, and was informed that there was. Plaintiff, thereupon wrote a telegram and addressed it to his father, John McAllen, at Edinburg, directing that the family carriage be sent to Pena to meet this plaintiff, which defendant's agent undertook to transmit for the sum of eighty-five cents, which was paid. It is averred that plaintiff remained in San Antonio for six days awaiting an answer to his dispatch; that he called at defendants's office and was told that no reply had been received. At the expiration of six days, he went to Pena. The carriage had not arrived. It was only seventy-five miles from that point to the home of his father, by the usual traveled route, but no conveyance could be obtained, and he was compelled to take passage in a "jerkey" and on a buck board by way of Rio Grande City, to Edinburg, a distance of two hundred miles.

It was alleged that, when plaintiff realized the fact that the family carriage had not been sent to Pena, his mind became oppressed with dreadful forebodings as to the cause of its not being there. He had learned, while in San Antonio, that his father was sick, and this was the occasion of the dispatch for the carriage, though the defendant was not informed of this or any other reason for the sending of the message. During the entire journey from Pena, plaintiff's mind was racked with doubt and uncertainty as to his parent's condition; suffering the most excruciating agony for fear some dreadful calamity had befallen him. It was further averred that plaintiff was severely battered and bruised by the jars and jolts of the jerkey and buckboard, inflicting great physical pain and suffering upon him. The actual expenses of the journey was laid at sixty-nine dollars. It was alleged that the telegraph office at Edinburg had been closed for more than a month before this, and that it was, or ought to have been known to defendant; and that soon after sending the message it did learn this fact, and the further fact that the message could be transmitted by a more circuitous route; that it failed to send the message, and concealed the fact from plaintiff; that at the

time plaintiff applied to know whether there was a telegraph office at Edinburg, he was very anxious upon the subject, and that after defendant's agent had answered that there was, he took the precaution to ask if he was sure, and was answered contemptuously, "We ought to know." It was averred that these several acts were done for the purpose of injuring, annoying and oppressing the plaintiff; that they were willful and malicious on the part of the defendant's agent, and that defendant after being fully informed of the same, ratified and adopted all the acts of its agent, and thereby became liable to respond in punitory as well as actual damages.

The exception to the eighth paragraph of the petition was, that it was not stated whether the damages claimed therein were actual or exemplary, the amount alleged being ten thousand dollars. We think this section of the petition objectionable, in not stating the character of damages claimed, and for that reason subject to the exception urged.

After this exception was sustained there only remained a claim for sixty-nine dollars actual and ten thousand dollars punitory damages. The claim for punitory damages will be considered hereafter.

It is contended that while the wrong complained of grew out of a contract, that it is in fact, a tort. Let it be conceded. In cases of tort the rule is, the wrong doer shall be answerable for all the injurious consequences of his tortious acts, which, according to the usual course of events and general experience, were likely to ensue, and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated. (1 Sutherland on Damages, 74.) Under this rule had it been a fact that no other conveyance could be procured from Pena to Edinburg except such as those upon which plaintiff took passage, it could not have been anticipated, that in the usual course of such a journey that plaintiff's posteriors would become bruised or lacerated to such an extent as to cause serious physical pain; at all events, no damages were specially laid on account of such pain and suffering, and if plaintiff desired to insist upon such, he should have amended his petition in that particular. There is no such gross negligence, willful wrong or oppression shown in this case, as, in our opinion, would entitle the plaintiff to exemplary damages if the suit had been brought against defendant's agent instead of the defendant. Such being the case, any question of ratification on

the part of defendant becomes unimportant, for if the agent would not be responsible for punitory damages the principal could not be. At the time plaintiff contracted with defendant's agent for the transmission of this message, he did not make the fact that his father was in a perilous condition known, and any mental suffering that may have been occasioned in consequence of the failure to deliver the telegram that was induced by the sickness of plaintiff's father could not have been contemplated by defendant's agent, nor was it the necessary or usual consequence of a failure to perform such a contract, and hence no damages on that account can be recovered. (Daniels v. W. U. Telegraph Co., 61 Texas, 452; Hodby v. Boxendale, 9 Exch., 341; Conder v. W. U. Telegraph Co., 34 Wis., 471; 1 Sutherland on Damages, 74.)

In this case it seems that the plaintiff's mental anguish was not the result of any real or adequate cause. It does not appear that the father was dead or in such condition as demanded the personal presence or attention of the son. On the contrary, the sorrows of the plaintiff were imaginary, and were caused by the failure on the part of the father to send the carriage to Pena, which the affectionate son attributed to the fact that the father was dead or too dangerously ill to attend to ordinary business, when in truth the failure was due solely to the fact that no request to send forward the carriage had been received. The deduction of the son was not logical, or, at all events, the occurrence might have been well accounted for on some other hypothesis than the disability of the father.

If grief or sorrows produced by things unreal, mere figments of the brain, are held to give a cause of action for a breach of contract or a tort, an individual of a somber, glowing imagination, would often be entitled to large damages on account of mental suffering, while others of a buoyant fancy for the same breach of duty would not be entitled to anything; and damages, instead of being measured by the rules of law as applied to the real facts, would largely depend upon the fertility of the imagination of the suitor. After the demurrers to the petition were sustained no cause of action remained, and the judgment of dismissal was correct and should be affirmed.

*Affirmed.*