Addison sued the railroad company in the District Court of Walker County for $5,000 damages which he alleged accrued under the facts hereinafter stated. It is unnecessary *Page 243 
to make a statement of the pleadings, as no question upon their sufficiency is presented in this court. Addison resided at a village on the defendant's railroad, called New Waverly, being a flag station and so marked upon its time card. On the 6th day of February, 1905, Addison went from Conroe, another station on the defendant's road, to New Waverly, where his family then resided, with the purpose to return to Conroe on the passenger train which was due to pass New Waverly at 4:00 p.m. Addison was in business at Conroe and had the key to the storehouse in his pocket so that the house could not be opened the next morning, which was Monday, until he reached Conroe. The train upon which he desired to return was late and he missed getting passage when it did pass, so he determined to go to Conroe on the next passenger train, due to pass New Waverly about 12:01 that night. Addison's residence was within three or four hundred yards of the depot. He remained at his house until nearly train time when he repaired to the depot building and found neither light nor fire in the building and was unable to find any fuel with which to make a fire. The train proved to be late, arriving about 1:45 a.m. During his stay at the depot waiting for that train he suffered a good deal from the cold. When he heard the whistle of the train as it approached New Waverly he went out upon the track and gave the usual signal for it to stop, remained upon the track until the whistle was blown as he understood to stop the train, and stood on the track until the train was so near to him that he could have been seen by the engineer if he was looking down the track. The train did not stop. The engineer swore that he was looking down the track and that if there had been a signal, as Addison testified, he could have seen it. The evidence was sufficient to justify the jury in finding that the engineer did see the signal or that he was not keeping the lookout which the law required that he should have done at that place. After the train had passed, Addison hired a buggy and team at New Waverly and drove through the country to Conroe, reaching there about 8 o'clock the next morning. It was sleeting, the wind blowing from the north, and was very cold; and, although Addison took all precaution to protect himself from the cold, he suffered a great deal and was afterwards afflicted with neuralgia, caused by the exposure, which continued for a week or ten days and gave him much pain. The neuralgia returned from time to time during the interval between the time of the exposure and the day of the trial. In the view we take of this case it is unnecessary to state the facts more fully. The jury returned a verdict for the plaintiff for the sum of $500.
The plaintiff in error submits the case to this court upon two assignments, only one of which we deem it necessary to consider. The first assignment is stated as follows: "The Court of Civil Appeals erred in holding that the negligence of plaintiff in error in failing to stop its train upon being flagged by defendant in error in order to permit the defendant in error to take passage thereon from said station of New Waverly to the station of Conroe, was the proximate cause of the damage sustained by the defendant in error, by reason of sickness and physical pain and suffering occasioned by exposure and cold weather in the journey undertaken by the defendant in error in a buggy across the country in the night time from said station of New Waverly to *Page 244 
said station of Conroe." The trial court submitted the case to the jury by the following charge: "If you believe from the evidence that at the time charged in plaintiff's petition the plaintiff was at New Waverly station on defendant's line of road and that it was the custom of the defendant to stop its passenger trains when proper signals were given to receive passengers for transportation to other points and that such signals were given at the time alleged so that they could be seen by the engineer in charge of the passenger train that plaintiff wished to board to reach said Conroe and that the engineer failed to stop the train after seeing such signal or, if he failed to see such signal because of the failure to keep a proper lookout, such neglect or failure to stop the train would be a violation of the duty owed by the defendant to the traveling public; and if, in consequence of such violation of duty to the traveling public the plaintiff was compelled to hire a buggy and team and drive from New Waverly to Conroe as alleged; and if a preponderance of the evidence shows that by reason thereof, and not through the failure or neglect of plaintiff to use all such prudence and caution to protect himself from cold and exposure as a person of ordinary prudence and caution would have used under such or similar circumstances and conditions of time and weather, plaintiff suffered physical pain and injuries as a direct and proximate result of such violation of duty to the traveling public by defendant, plaintiff would be entitled to recover for such physical pain and injuries; and if you so find you will find for plaintiff."
When the passenger train failed to stop at New Waverly in answer to the signal of Addison the railroad company "should have anticipated that Addison would do that which was prudent for him to do under the circumstances and should have contemplated any exposure to which he would be subjected in consequence of being left at that place." St. Louis S.W. Ry. Co. v. Ricketts,96 Tex. 71; Texas Pacific Ry. Co. v. Cole,66 Tex. 563; McAllen v. Telegraph Co., 70 Tex. 243
[70 Tex. 243]. The difference between the railroad cases cited above and the case at bar is that in each of those cases the railroad company had negligently carried passengers beyond their stopping place and it became necessary for them to return in order to reach home. In the present case Addison was at the place of his home and was not carried away by the railroad company, but being left by the train, within four hundred yards of his house, the railroad company could not anticipate that he would start out in the dark and stormy night for Conroe in a buggy or other road vehicle. The only reason Addison had for taking the trip from New Waverly to Conroe that night was to prevent the loss of a few dollars which might perhaps accrue because the doors of his storehouse would not be opened on Monday morning. It can not be said upon the facts of this case that his choice to make the trip in the nighttime and through the storm was a necessary or usual consequence of the failure of the railroad company to take him on the train, nor can it be said that the railroad company ought to have anticipated that he would do so rash a thing, for surely it does not need argument to impress upon the mind of any man the conclusion that it was not the act of a reasonably prudent man who had a proper care for his own safety and comfort. The evidence is undisputed: it is his own testimony, and it *Page 245 
leaves no ground for a difference of opinion, that he deliberately chose to undergo the discomfort and take the chance of injury to his health and his own personal safety in making a trip of that kind in the storm in order to save himself from slight pecuniary damages.
The law does not permit a man under such circumstances to take the risks that Addison took and to hold the railroad company responsible for damages which accrued by reason of his own reckless and imprudent acts. St. Louis S.W. Ry. Co. v. Thomas, 27 S.W. Rep., 419; Louisville N. Ry. Co. v. Fleming, 14 Lea (Tenn.), 155; Texas Pac. Ry. Co. v. Cole, 66 Tex. 562; Indianapolis, B. W. Ry. Co. v. Birney, 71 Ill. 391.
There was no evidence before the jury which tended to show that the injuries, which Addison received by his trip from New Waverly to Conroe, were proximately caused by the negligence of the railroad company and the court erred in giving the charge copied above.
The judgment of the District Court and that of the Court of Civil Appeals are reversed and the cause is remanded.
Reversed and remanded.