**PRESS et al. v. DAVIS et al.**

No. 13723.

Court of Civil Appeals of Texas. Fort Worth.

June 3, 1938.

Rehearing Denied July 1, 1938.

T. R. Boone and Kearby Peery, both of Wichita Falls, for appellants.

Ray Bland and Kilgore & Rogers, all of Wichita Falls, for appellee J. G. Quinn.

DUNKLIN, Chief Justice.

On June 2nd, 1930, Mary Foley, a feme sole, loaned to W. F. Davis the sum of $5,000, for which Davis executed to her two promissory notes, the first for the sum of $2,000, payable two years after date; the second for $3,000, due five years after date, each of said notes bearing interest at the rate of eight per cent per annum, payable

semi-annually, and past due interest to draw interest at the rate of ten per cent per annum. To secure the payment of the notes, Davis executed a deed of trust on three parcels of property, as follows: First, a surface lease on the west 90 feet of lots 5 and 6, Block 33, Floral Heights Addition to Wichita Falls, Texas; second, surface lease on Lot 7, Block 190, O. T. of Wichita Falls, Texas; third, all of the W. F. Davis subdivision of the J. A. Scott Survey No. 17, Abstract 298, except lots 4 and 5 of that addition.

Each of said notes contained the stipulation that the failure to pay either of said notes or any interest thereon would give the right of the holder to mature all of said notes then unpaid and have a foreclosure of the deed of trust lien. Each of said notes further stipulated for ten per cent attorneys' fees if placed in the hands of an attorney for collection.

Davis paid the sum of $200 as interest on the two notes up to December 2nd, 1930, and $100, which was one-half the interest due June 2nd, 1931, and thereafter payments were made on interest as follows: August 26th, 1932, $12.50; September 10th, 1932, $20; September 21st, 1932, $73.27; October 10th, 1932, $15; October 15th, 1932, $12.50; November 23rd, 1932, $11.30.

Davis was engaged in the City of Wichita Falls in the wholesale distribution of gasoline, and on September 21st, 1931, he was sued by the State for delinquent taxes due as such wholesale distributor, arising from sales of gasoline, during the year 1930, the amount of taxes sued for being $5,276.61. On December 18th, 1931, judgment was rendered in favor of the State against the Detroit Fidelity & Surety Company, surety on Davis' bond, for $5,061.70, with judgment over against Davis in favor of the Surety Company for the same amount, with foreclosure of a tax lien against Davis on equipment and stock on hand, used by him in several of his places of business, in different counties of the State, including Wichita County. That foreclosure included the stock and equipment on hand at Wichita Falls, situated on two of the leases that were covered by the deed of trust given Miss Foley, thus leaving nothing but the naked leases themselves. Thereafter, Davis ceased to do any business on those leased premises, and on February 4th, 1934, he was adjudicated a bankrupt.

On February 6th, 1934, Miss Foley bought in the lease described in her deed of trust as the W. F. Davis subdivision, under foreclosure proceedings, instituted by her, for the sum of $1,500. That sum, plus all payments that had been made theretofore by W. F. Davis on the notes executed by him to Miss Foley, aggregated $2,500, leaving a balance unpaid of $2,500.

Mary Foley having married Marvin Press, she, joined with her said husband, instituted this suit on October 14th, 1935, against W. F. Davis and J. G. Quinn, in the District Court of Wichita County, to recover $2,500, the balance unpaid of her said debt, on allegations that she was induced to make the loan by false and fraudulent representations made by defendant, Quinn, that the property covered by the deed of trust given as security for the loan was worth at least $20,000, and that said notes would be amply secured thereby, and that as a part of said fraudulent scheme to induce Miss Foley to part with her money, which represented her earnings from personal labor, defendant, Quinn, represented to her that he would look after her rights therein and would have an attorney examine the title to the property, to make sure of the valid title to the property so offered as collateral security. According to further allegations, Quinn procured the execution of the notes and deed of trust by Davis and brought them to Miss Foley, who, at his request, delivered to him her check for the $5,000, payable to Quinn and Davis, and in furtherance of said fraudulent scheme.

Defendant Quinn, on or about July 1st, 1930, procured from Davis his assignment to Miss Foley, certificate No. 72 for 200 shares of Class A common stock in the Atlantic, Pacific & Gulf Oil Company, and at about the same date delivered same to Miss Foley, together with certain abstracts of title to the property covered by the deed of trust, as additional collateral security to the notes, but at that time Quinn knew that the stock was absolutely worthless, and also knew that the abstracts so delivered did not show good title in W. F. Davis to some of the property covered by the deed of trust.

According to further allegations in the petition, both Quinn and Davis knew at the time the loan was made that Davis' equity in the two leases first described above was worthless, and knew of the tax lien against the same in favor of the State, which resulted in a total loss through foreclosure suit by the State, as noted above, and knew that the third tract described above was not worth more than $1,500, and by reason of the fraud so

practiced, plaintiff sustained a loss of $2,500 of the money so loaned, for which Quinn was liable as damages.

In the second count of the petition, it is alleged that J. G. Quinn, learning that Miss Foley had the $5,000 on hand, which she had accumulated from her earnings, solicited plaintiff to employ him to negotiate a loan thereof for her benefit, agreeing in that connection that he would look after her rights therein, and procure as collateral security property worth at least $20,000, and that, relying upon the confidence she had in Quinn, she agreed to that employment; that Quinn, having undertaken to perform that service, owed her the duty to exercise reasonable care to perform that trust; but that he was guilty of negligence, which was a proximate cause of the loss of at least $2,500 of the loan, in the following particulars: (a) In not making a proper investigation of the value of the property taken as security, to determine whether or not it was worth $20,000; (b) in not investigating the financial condition of the Atlantic, Pacific & Gulf Oil Company, to determine the value of the stock certificate for 200 shares, mentioned above; (c) in not, by proper inquiry, discovering that Davis only had a surface lease on the two pieces of property first described in the deed of trust on which he was paying a rental on one tract of $165 per month, and another tract of $200 per month, and not discovering that the same were practically worthless as security; (d) in not looking into the financial condition of W. F. Davis, who was using those two pieces of property as a filling station, to determine whether or not he had paid the gasoline tax due the State on that business; (e) in not looking after and making proper valuation of the property known as the W. F. Davis Subdivision, and discovering its true market value at that time.

Following both counts in the petition, plaintiffs made further allegations as follows:

"Plaintiffs further say that sometime about April, 1933, J. G. Quinn stated to the plaintiff, Mary Foley, in order to keep her from making a thorough investigation of the fact, that the State of Texas had already foreclosed, or was about to foreclose on the two tracts of land in question, a statement in substance as follows:

"'I am keeping a close touch with this matter (referring to the loan hereinabove referred to) and hope to get some money for you by time note is due in June. Conditions have been terrible. No one has any money.

"'I have also looked after renewal of all insurance policies for every one of your loans and I have renewal clauses for all that are due. Will give them to you in a few days. Just be patient about all matters. I am looking after your interest.'

"That this statement was made by the defendant, J. G. Quinn, when there was, at that time, some $300.00 past due interest, and that the first note was about to come due and at that time the State of Texas had obtained judgments against W. F. Davis and against the land owners of the two tracts of land involving the surface rights foreclosing the State of Texas' lien on all the rights of W. F. Davis' interest in and to the two tracts of land under which he only held a surface right lease, all of which facts were known to J. G. Quinn, and the said J. G. Quinn carrying out his method, plan and scheme, was attempting to keep the plaintiff quiet by telling her to please be patient, that he was looking after her interest, all of which was done for the purposes of tolling the statute of limitations and keeping the plaintiff ignorant of the true facts and circumstances existing concerning this loan; and that sometime later, in 1933 or 1934, the said defendants hypothecated as additional security to these loans another certificate of stock in what is known as the 'Orient Gas & Oil Company' being certificate No. 4 for 120 shares, which at the time of their hypothecation to this plaintiff was absolutely worthless, and the said W. F. Davis knew that the same was worthless and of no value whatsoever, and the said J. G. Quinn knew that the same was worthless and of no value whatsoever, but that same was hypothecated to the plaintiff for the purpose of allaying the plaintiff from fully investigating and attempting to obtain a collection of her money."

According to further allegations in the petition, W. F. Davis became insolvent and was adjudicated a bankrupt, and that Mary Foley did not discover his insolvency and the insufficiency of the collateral security for her loan until about January 18th, 1934. At that time the two surface leases had already been lost, as a result of the foreclosure of the tax lien in favor of the State. She then proceeded to foreclose her deed of trust lien on the W. F. Davis

Subdivision, and realized from that only $1,500, which, together with the interest paid to her by Davis on the loan, amounted to only $2,500, leaving a balance of $2,500 as the amount of her loss, resulting from the negligence of Quinn, as Miss Foley's agent, in the respects above noted, and for which she sought a recovery in the second count in the plaintiff's petition.

The defendant Quinn filed an answer consisting of a general demurrer, special exceptions and general denial, to plaintiffs' suit, with pleadings of special facts, in answer to allegations in plaintiffs' petition, together with this plea:

"This defendant further says that for more than two years immediately prior to the. filing of her suit herein the said Mary Foley knew the true facts with respect to all of such securities and knew that this defendant had no part in the making of such loan or in the borrowing of such money by the said W. F. Davis, and knew all of the facts and circumstances with respect to the making and closing of such loan, and of the depression and of the shrinkage in values and was in full possession of all the facts with respect to all of such matters; by reason of which knowledge and information on her part the said Mary Foley was barred by the Two Year Statute of Limitations, from maintaining any suit against this defendant, which statute of limitations is pleaded by this defendant in bar of her alleged cause of action."

By supplemental petition, plaintiffs again pleaded the letter of Quinn to Miss Foley, set out in their answer, as an estoppel against that plea of limitation.

The defendant, Davis, filed an answer consisting of a general demurrer and general denial, but did not urge the defense of limitation.

The case was tried before a jury, and following are the special issues, with the jury's findings thereon:

1. Prior to the time of the loaning of the $5,000 in question, J. G. Quinn represented to Mary Foley that the collateral security that would be placed on said loan was worth $20,000.

2. Said representations made by J. G. Quinn were untrue.

3. Mary Foley, in making said loan in question, believed the representations made to her by Quinn to be true.

4. Mary Foley, at the time she made the loan in question, relied upon the representations made to her by Quinn, concerning the values of said collateral security.

5. Mary Foley suffered damage by reason of the failure to have collateral security of the value of $20,000, pledged on said loan.

6. Plaintiff suffered $2,500 damage by reason of the failure to have the $20,000 worth of collateral security placed on said loan.

7. The value (free of all debts) of the W. F. Davis Subdivision, referred to as Iowa Park Road property, in June, 1930, which was mortgaged to the plaintiff, Mary Foley, was $2,500.

8. The value, free of all debts, at the time the loan was made by the plaintiff, of W. F. Davis' interest in the property known as the Bernard Martin Filling Station, was $2,500.

9. The value, free of all debts, at the time the loan was made in June, 1930, by plaintiff, Mary Foley, of the W. F. Davis interest in the filling station known as the "Williams-Dwyer" property, was $5,000.

10. At the time the loan was made, the 200 shares of common stock of the Atlantic-Pacific & Gulf Oil Company was valueless.

11. J. G. Quinn, by the use of ordinary diligence, could have found out the value of the properties hypothecated to secure the loan from plaintiff prior to the time said loan was actually consummated.

12. J. G. Quinn' failed to use ordinary care to make investigation relative to the value of the property pledged to the plaintiff, Mary Foley, to secure her $5,000 loan in question.

13. Mary Foley discovered the value of the properties hypothecated to her to secure the loan in 1932.

14. Mary Foley used reasonable diligence toward learning the values of the properties hypothecated to her to secure said loan.

15. W. F. Davis, at the time he pledged the two filling stations and common stock of A. & P. Gulf Oil Company stock, did not know that they had no value.

16. At the time W. F. Davis mortgaged the Iowa Park road property to plaintiff, Mary Foley, he did not know that same was not worth more than $1,750.

17. W. F. Davis believed the property mortgaged to Mary Foley, free of all debts, at the time of obtaining said loan, to be worth: Bernard Martin Flling Station, $2,-500; Williams-Dwyer Filling Station, $5,-

000; and 200 shares of common stock in the A. & P. Gulf Oil Company, none; W. F. Davis Subdivision on Iowa Park Road, $2,500.

. 18. W. F. Davis, at the time he received the money and executed the notes to plaintiff, Mary Foley, had a bona fide intention of paying said notes.

20. J. G. Quinn agreed to look after the security for plaintiff, Mary Foley, for the loan in question, prior to the time said loan was made.

21. Mary Foley, prior to the 14th day of October, 1933, knew that the State of Texas had foreclosed its tax lien upon the filling station properties referred to in the evidence, as the Bernard Martin Filling Station and the Williams-Dwyer Filling Station.

22. Mary Foley was possessed of such information prior to the 14th day of October, 1933, as would have incited an inquiry in the mind of an ordinarily prudent person to ascertain the status of the securities and the value of the securities which she held as collateral to the W. F. Davis loan.

23. Mary Foley did not act independently of the representations made by Quinn, with respect to the securities which she was obtaining for such loan.

After the return of that verdict, plaintiffs moved for judgment in their favor. That motion was overruled and judgment was rendered denying plaintiffs any recovery. The court did not file separate findings and conclusions showing the basis of the judgment rendered, but the judgment, after setting out the findings of the jury, included these recitals:

"Thereafter on the 21st day of December, 1936, came on for consideration the motions severally made by the defendants, J. G. Quinn and W. F. Davis, for judgment, and the court having fully considered the pleadings, the evidence and the verdict of the jury is of the opinion that the law is with such motion.

"It is therefore ordered, adjudged and decreed by the court that the plaintiffs, Mary Press and husband, Marvin Press, take nothing against the defendant, J. G. Quinn, or against the defendant, W. F. Davis, and the defendants, J. G. Quinn and W. F. Davis, recover of and from said plaintiffs all costs in this behalf incurred and expended."

Appellant insists that in the absence of separate findings and conclusions by the trial court, it is manifest that the court sustained appellee's plea of limitation by reason of the findings of the jury in answer to special issue No. 13 that Mary Foley discovered the values of the property hypothecated for the loan, in the year 1932, more than two years prior to the institution of the suit on October 13th, 1935.

It is appellee's contention that the judgment was correct for other additional reasons: First, that the measure of damages for the fraud alleged is fixed by law as of the date the fraud was committed; and, that since the jury found that the securities were then worth $10,000, which was double the amount of the loan, no recoverable damages were established in the first instance; and therefore the further finding that Miss Foley sustained damages in the sum of $2,500 is immaterial; second, that her cause of action for the fraud, if any was established, accrued at the time the fraud was committed, inducing the loan, which fixed the beginning of the period of limitation of two years; third, at all events the period of limitation began in the year 1932, when Miss Foley then discovered the falsity of appellants' representation, made at the time the loan was made, that the securities hypothecated were worth $20,000.

Under appropriate assignments of error, appellants present these four propositions:

"Proposition No. 1. Where a cause of action must necessarily depend upon a preliminary act the cause of action does not accrue until the preliminary act has been completed, and since no action for fraud can be maintained until damage accrues, limitation does not start to run until that damage has been ascertained.

"Proposition No. 2. Where a party has been defrauded by reason of misrepresentations as to the value of collateral security, no action can be maintained against the person guilty of the fraud until a foreclosure is had as against the collateral security and the amount of damage ascertained. Therefore, limitation does not start to run until the person defrauded exhausts his remedy against the collateral security.

"Proposition No. 3. A finding by the jury that misrepresentations were made concerning the value of collateral security for a note and that the plaintiff discovered such misrepresentations in 1932, without a further finding that the collateral security securing the notes was actually worth less than the amount of the notes is not sufficient to show limitation, for the bur-

den of proof is upon the defendant pleading limitation to both plead and prove that at the time the plaintiff discovered that misrepresentations had been made to her, damage had resulted to the plaintiff of such a nature as to enable the plaintiff to predicate a cause of action based upon fraud.

"Proposition No. 4. Where the plaintiff loaned $5,000.00 and took therefor a series of two notes payable on the 2nd day of June, 1932, and the 2nd day of June, 1934, respectively, upon the fraudulent representations of the defendant that said notes secured by collateral in the amount of $20,000.00, and thereafter the plaintiff discovered, in 1932, that this collateral security was worth less than $20,000.00—the plaintiff was first required to exhaust the collateral security before she could maintain a cause of action on the basis of fraud, because until this was done, her measure of damages was uncertain and her cause of action for fraud was subject to a plea in abatement, and where the plaintiff was not guilty of any negligence in not foreclosing her security until February 12th, 1934, limitation did not start to run on the cause of action for fraud until February 4th, 1934, and, therefore, her cause of action was not barred on October 14th, 1935."

All those propositions are based on the first count in plaintiff's petition for fraud and deceit. None is presented based on the findings of the jury that appellee undertook, as agent for Miss Foley, to lend the money on good security and that he failed to use ordinary care to do so, as alleged in the second count in plaintiffs' petition. The burden was upon appellee to prove all the facts necessary to sustain his plea of limitation, including the date limitation began. 28 Tex.Jur. par. 283, p. 298.

It seems to us that there is some confusion and lack of harmony in principle, in some of the decisions of our State as to when a cause of action accrues for damages for suits of the character here considered, within the meaning of the two year statute of limitation, Vernon's Ann. Civ.St. art. 5526.

Appellee stresses the decision in American Indemnity Co. v. Ernst & Ernst, 106 S.W.2d 763, by the Waco Court of Civil Appeals, writ denied, and authorities there cited, as controlling in this case, on the question of limitation. That was a suit by the Indemnity Company against Ernst & Ernst, public auditors, for damages, based on allegations of their fraud in furnishing to the Mexia Independent School District a certificate that they had examined the books and accounts of one O. P. Arrington, tax assessor of the District, for the year 1926, and found that he had correctly accounted for all moneys coming into his hands, when, in fact, he had embezzled more than $5,000 of public funds.

Relying on the truth of that report, the Indemnity Company became surety on the assessor's bond for the succeeding year, and at the end of a suit by the District, had been forced to pay the sum of $6,785.25, representing the amount of embezzlement by the assessor during that year. The suit was to recover that amount, as damages, resulting from the fraud so alleged.

The court held that plaintiff's cause of action accrued and the two year statute of limitation began to run at the time plaintiff discovered the fraud, although the amount of damages could not then be fully determined. In support of that conclusion, this was said (page 765):

"The rule is stated in Houston Water-Works v. Kennedy, 70 Tex. 233, 236, 8 S. W. 36, 37, as follows: 'If, however, the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right,—then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar.' The rule is stated in 17 R.C.L. 763, § 129, as follows: 'While it is generally true that no man has a right of action against a wrongdoer unless he is personally injured, yet in the case of every violation of the rights of a particular individual, the law ordinarily implies damage, for which a right of action accrues though the damage be but nominal. Therefore, as a general rule, where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action and is not legally

severable from its consequences.'" Citing many decisions.

The period fixed by each of the statutes of limitation of two and four years, begins "after the cause of action shall have accrued."

In Phillio v. Blythe, 12 Tex. 124, this was said, in opinion by Hemphill, Chief Justice:

"In what does a cause of action consist? It may be defined to consist as well of the right of the plaintiff in the action, as of the injury to such right. In Chitty on Pleadings, vol. 1st, p. 288, the three principal points of a cause of action are said to be, the right whether founded upon contract or tort, (2) the urging to such right, and (3) the consequent damages. It may be admitted that the terms cause of action are sometimes used in a more limited sense, and that where the cause is founded on a contract, the contract itself is denominated the cause of action; but more frequently, and where the terms are used with more precision and accuracy, the terms embrace a much wider scope, and include not only the contract, but its performance, if executory, and also the breach of such contract. For instance, the statute requires a plaintiff, in his petition, to set forth a full and clear statement of his cause of action. This requisition would not be filled by a bald statement of the term of the contract, if a contract lay at the foundation of the action. An averment of the performance of the contract by the plaintiff, of its breach by the defendant, and, according to Chitty, of the consequent damages, is equally essential with a statement of the terms of the contract itself, as, together, they contribute the body, or substance, of the cause of action."

That announcement of the necessary elements of a cause of action has been cited and followed in numerous decisions, including the following: Houston & T. C. Ry. Co. v. Hill, 63 Tex. 381, 51 Am.Rep. 642; Savage v. H. C. Burks & Co., Tex. Civ.App., 270 S.W. 244; Brown Cracker & Candy Co. v. Jensen, Tex.Civ.App., 32 S. W.2d 227; San Jacinto Life Ins. Co. v. Boyd, Tex.Civ.App., 214 S.W. 482; Danciger v. Smith, Tex.Civ.App., 229 S.W. 909; Brooks Supply Co. v. Senter Bros. & Co., Tex.Civ.App., 245 S.W. 101; Union Trust Estate v. Orr, Tex.Civ.App., 3 S.W. 2d 472.

In 33 Tex.Jur. p. 453, sect. 37, this is said:

"It has always been a rule of pleading in Texas that a petition must contain averments of all the facts upon which the right to recover depends—that is to say, the plaintiff must allege facts constituting a cause of action and that the defendant is concerned with the cause of action averred; otherwise the petition fails to state a cause of action. This is an elementary (and now statutory) requirement; and, while a petition will be liberally construed in favor of the pleader as against an objection that has been deferred until after verdict, nevertheless the petition must contain something to justify an inference of the intent of the pleader to aver facts not explicitly pleaded. If it is necessary to make proof of any fact in order to establish the cause of action, then it is necessary to allege that fact."

Also, this, in sect. 45, p. 466;

"While the Practice Act directs that judgments be so framed as to give the party all the relief to which he may be entitled either in law or in equity, it is also required that 'the petition * * * shall also state the nature of the relief sought.' Some relief must be asked in order to authorize any judgment at all; and it is good pleading to ask specifically for the relief that the pleader considers should be granted, adding thereto a prayer for general relief."

Numerous decisions are cited in support of the text. Also Article 2003, Vernon's Ann.Civ.St., which reads:

"The petition shall state the names of the parties and their residences, if known, with a concise statement of the cause of action, and such other allegations pertinent to the cause, as the plaintiff may deem necessary to sustain his suit, without any distinction between suits at law and in equity, and shall also state the nature of the relief sought."

It is a well settled rule that fraud without damage is not actionable. 1 Tex. Jur. sect. 19, page 626; 12 R.C.L. sect. 10, page 239.

Seibert v. Bergman, 91 Tex. 411, 44 S. W. 63, was a suit by Bergman against Seibert, for damages for breach of an implied covenant against the incumbrances arising from the word "grant" in a deed from Seibert to Bergman, as prescribed in Articles 1297 and 1298, Vernon's Ann. Civ.St. At the time of the conveyance, there was an incumbrance outstanding against the property.

This was a question certified to the Supreme Court by the Court of Civil Appeals, with the answer thereto:

" 'When did limitation begin to run against the cause of action of Bergman and wife?'

"We answer the foregoing question, that the statute of limitations did not begin to run against the right of action of Bergman against Seibert, upon the implied covenant against incumbrances, until the land was sold under the judgment which foreclosed and enforced the incumbrance.

"The implied covenant against incumbrances which arose under the statute, upon the language used in the deed, was broken at the time the deed was made, in the 'sense that the promise relates to an existing condition, and is falsified then, if it ever is. But, if the damage do not then result, it is misleading and mischievous to treat this mere technical breach as constituting plaintiff's cause of action.' Post v. Campau, 42 Mich. 90, 3 N.W. 272.

"The right of action for the actual damages sustained by the appellees by the breach of the covenant did not arise until the land was sold under the judgment enforcing it, although the incumbrance existed when the deed was executed. [Citing authorities.]

"The statute of limitation did not begin to run until the covenantee could maintain a suit to recover the damages sustained by the breach of the covenant. In commenting upon the position taken, that the cause of action accrued when the deed was made, Judge Cooley, in the case of Post v. Campau, before cited, said: 'As the terms of the covenant sued upon were falsified by facts existing at the time, a technical breach may be said to have then taken place; but as no damage followed from this breach, until the claimant purchased from Butler more than ten years afterwards, the rule that the claimant's right of action shall be deemed to have arisen at the delivery of the deed involves this manifest absurdity: that the claimant's remedy was barred before he was damnified,—a result that can scarcely be consistent with any just or proper rule of law.' This clear and forcible statement of the proposition effectually refutes the claim that, upon the making of a covenant against existing incumbrances, the statute of limitation commences to run against an action to recover actual damages thereon

when such damages do not accrue at the same time.

"From the foregoing well-sustained propositions it follows that the statute of limitations could not begin to run in this case until the land was sold in the enforcement of the incumbrance, because, up to that time, the covenantee had lost nothing, and could have maintained no action, except for nominal damages, which would have been no recompense for the injury afterwards suffered by the eviction. This conclusion is sustained, in able and well-considered opinions, in the cases of Post v. Campau, 42 Mich. 90, 3 N.W. 272, and Wyatt v. Dunn, 93 Mo. 459, 2 S.W. 402, 6 S.W. 273, which we have before cited."

In Post v. Campau, there cited, after noting that nominal damages are given in the absence of proof of actual damages, this was said (page 275): "The elements of a cause of action are,—First, a breach of duty owing by one person to another; and, second, a damage resulting to the other from the breach. Damage, where no duty is violated, is damnum absque injuria. A neglect of duty, where no loss occurs, is equally incapable of giving a right of action. * * * It is idle to call that a remedy which redresses nothing, but leaves the real injury in existence as before, threatening to inflict the same damage and in the same way."

A like holding was made by the Supreme Court in Thomas v. Ellison, 102 Tex. 354, 116 S.W. 1141. Also, Hill v. Provine, Tex.Civ.App., 260 S.W. 681; Savage v. H. C. Burks & Co., Tex.Civ. App., 270 S.W. 244, and other decisions there cited; Shaw v. Bush, Tex.Civ.App., 61 S.W.2d 526, writ refused, and authorities cited; Cruse v. Shaw, Tex.Civ.App., 93 S.W.2d 541; Mooers v. Hunter, Tex. Civ.App., 45 S.W.2d 387, and decisions cited.

In Williams v. Pure Oil Co., 124 Tex. 341, 78 S.W.2d 929, opinion by Critz, J., this is said (page 931): "It seems to be the settled law of this state that limitation does not begin to run until the right or cause of action accrues. The right or cause of action does not exist until facts exist which authorize a person asserting the claim to seek relief in a court of competent jurisdiction from the person due to make reparation. It involves both the existence of the right and facts sufficient to constitute a cause of action." Many decisions are cited in support of that

announcement, including Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025. See, also, Austin Bros. v. Fields, Tex.Civ.App., 84 S.W.2d 311; Brown Cracker & Candy Co. v. Jensen, Tex.Civ.App., 32 S.W.2d 227.

An allegation of the amount of damages sued for is necessary to show jurisdiction of the court in which the suit is brought. The general rule is that in suits of the character of the instant case, nominal damages are allowed, not as compensation for the wrong, but as a basis for taxing the defendant with costs of suit by way of penalty for his wrong, in the absence of proof of the actual damages sued for. 11 Tex.Jur. sect. 27, p. 741; 8 R.C.L. pp. 423-427; 17 C.J. 720-725.

In Spencer v. Davis, Tex.Civ.App., 298 S.W. 443, it was held that a petition showing on its face that it is a suit for nominal damages only is insufficient as against a general demurrer.

Furthermore, a suit for nominal damages only would necessarily be in the Justice of the Peace Court, which would not be vested with jurisdiction to determine actual damages beyond the jurisdiction of that court, accruing later as the proximate result of the wrong.

In Parsons v. Uvalde Electric Light Co., 106 Tex. 212, 213, 163 S.W. 1, L.R.A.1916E, 960, a judgment in favor of Parsons and wife for damages resulting from smoke, dust and other annoyances caused by operation of defendant's machinery, was affirmed; the only question presented being whether the suit was barred by the statute of limitation. We quote the following from the opinion of Chief Justice Brown in that case (page 2), and who also wrote the opinions in Houston Water-Works v. Kennedy, supra, and Seibert v. Bergman, supra:

"In Houston Water-Works v. Kennedy, 70 Tex. 233, 8 S.W. 36, the court makes the distinction which clearly discloses its inapplicability as authority in this case. The cutting of a hole in the wall of the building gave to the owner a right of immediate action for weakening the wall, but the damage resulting from the unlawful act occurred when the crack appeared, *which the law required the owner to anticipate.* [Italics ours.] In this case no invasion of Parsons' right of possession nor injury to his property occurred when the structures of the electric light plant were erected, and no right of action accrued to him as owner of adjacent lots; indeed, no action could have been maintained against the company for reduction in value until, by the operation of the machinery, the injury accrued."

In Woodward v. Harlin, 121 Tex. 46, 39 S.W.2d 8, 41 S.W.2d 204, this is said (page 9):

"Upon the authority of Walcott v. Kershner (Tex.Com.App.) 291 S.W. 195, 196, the El Paso Court of Civil Appeals sustained a recovery of $468 and interest thereon for breach of a covenant in a deed by plaintiffs in error to defendant in error that a certain tract of land was free of encumbrances, when it was at the date of the deed subject to a vendor's lien for said sum of $468. It was neither alleged nor proven that defendant in error had lost the land or had discharged any portion of the incumbrance save accrued interest amounting to $25.77. 20 S.W.2d 158.

"The writ of error was granted upon the ground that the decision of the Court of Civil Appeals was in conflict with the decisions of the Supreme Court in Seibert v. Bergman, 91 Tex. 411, 44 S.W. 63, and Thomas v. Ellison, 102 Tex. 354, 116 S.W. 1141.

"The decisions are in rare accord in denying the right of a convenantee to recover anything save nominal damages for breach of a covenant against an incumbrance on land where no injury has been actually sustained by the covenantee other than the continued existence of the incumbrance.

"Thompson states: 'While a covenant against incumbrances is broken by the existence of an incumbrance, as soon as made, it is merely a covenant to indemnify, and, until the covenantee has removed or extinguished the incumbrance, he can not recover the amount thereof.' 4 Thompson on Real Property, § 3499, pp. 611, 612.

"Devlin in stating the same rule gives a reason oft assigned for it as follows: 'This covenant is considered to be one of indemnity. If the covenantee has not removed the encumbrance it may be he will never be disturbed by it. He may discharge the encumbrance, but if he does not do so the universal rule is that while it remains undischarged and he has suffered no actual injury, he is entitled to only nominal damage.' 2 Devlin on Deeds (3d Ed.) § 916, p. 1718.

" * * *

"The decisions of the Supreme Court of Texas have been to the effect that our statutory covenant against incumbrances (Rev. St.1925, art. 1297), implied from the use

of the word 'grant' or 'convey,' being the covenant relied on to sustain a recovery in this case, was a covenant looking to the future and promising compensation for damages at such time as the same might be actually sustained."

The court then cites the decisions in Seibert v. Bergman, and Thomas v. Ellison, with this statement: "The principle underlying the last-mentioned two decisions accords with that governing the operation in Texas of covenants of general warranty. Jones' Heirs v. Paul's Heirs, 59 Tex. 41; Graebner v. Limburger's Ex'rs (Tex.Com. App.) 293 S.W. 1100, 1101."

With this final conclusion:

"This suit presents no grounds for equitable relief, and defendant in error failed to plead any cause of action within the jurisdiction of the county court. His petition was therefore subject to the exceptions urged against it.

"It is therefore ordered that the judgments of the county court and of the Court of Civil Appeals be reversed, and that this cause be remanded to the county court."

Aside from the question as to the date when a cause of action for breach of warranty of title may accrue, the decision is in full accord with the holdings in Seibert v. Bergman and Thomas v. Ellison, that a cause of action for actual damages for such breach does not in fact accrue until the buyer is either evicted or else has paid off the incumbrance.

■■ In determining when a cause of action accrues, we believe it can make no difference whether the action is based on tort or on the breach of an implied contract. It is elementary that jurisdiction of courts may not be invoked to determine mere abstract questions of law. 1 Tex.Jur. sect. 24, p. 631; Munger v. Richards, Tex.Civ. App., 87 S.W.2d 797, writ refused.

As noted already, appellee insists that if plaintiffs had any cause of action for the fraud alleged, the damages therefor would be measurable as of the date the fraud was committed, which would also fix the date of the beginning of the applicable statute of limitation. And further, since the jury found that the value of the property hypothecated was worth $10,000, which was double the value of the loan, no recoverable damages were established as a basis for the finding of $2,500 damages in answer to issue No. 6.

In support of those contentions, the following authorities are cited: American Ind. Co. v. Ernst & Ernst, supra; Moore v. Beakley, Tex.Com.App., 215 S.W. 957; 12 R.C.L. sect. 1391, p. 390; Union Central Life Ins. Co. v. Jacob Scheidler, 130 Ind. 214, 29 N.E. 1071, 15 L.R.A. 89; Bridenstine v. Gerlinger Motor Car Co., 86 Or. 411, 168 P. 73, 922; Thayer v. Kansas Loan & Trust Co., 8 Cir., 100 F. 901. In Moore v. Beakley, supra, it appeared that Moore conveyed to Beakley certain lots in San Antonio, in exchange for certain other lots owned by Beakley and 13 mortgage bonds at the agreed par value of $100 each, secured by mortgage lien on certain other property, and other additional agreements of Beakley not necessary to note. Thereafter the bonds proved to be worthless, by reason of a foreclosure of prior liens and sale of the same collateral. Moore instituted the suit against Beakley for damages based on allegations that he was induced to make the exchange of properties by fraudulent misrepresentations by Beakley that the 13 bonds were secured by a superior first mortgage lien. In the opinion of the court, this was said (page 958):

"The measure of damages in a case of this character is the difference between the value of the property received and that given in exchange, at the time of the exchange."

It is to be noted that no issue of limitation was discussed in that case.

The following is quoted from 12 R.C.L. sect. 139, p. 390: "Again, one who is defrauded through false representations respecting the solvency of another is damnified as soon as he is induced to act in the manner occasioning the loss, and may maintain an action therefor at once, and an action for damages for fraudulently procuring a loan on inadequate security may be maintained as soon as the loan is made."

Bridenstine v. Gerlinger Motor Car Co., supra, involved an exchange of property, in which plaintiff was induced to accept a $2,500 note of a third person upon fraudulent misrepresentations that the note was secured by a lien on property worth $5,000, but which was worth only $1,000. In reply to a plea of limitation by the defendant, the plaintiff contended that since there had been no default on the note when the suit was instituted, it was impossible to determine whether the note was worth less than its face value, and for that reason the damages sought were not prova-

ble, when the suit was filed. On this point the court said (page 76):

"An attempt to prove damages might meet with more difficulties if made before default than if made after default, but a party is not prevented from making the attempt, for as said by Mr. Justice Cooley in Briggs v. Brushaber, 43 Mich. 330, 5 N.W. 383, 38 Am.Rep. 187:

" 'Controversies of the sort can only be determined in one way: The jury must judge of the extent of the damage by such evidence of value as the parties may be able to produce, and to postpone a remedy until the time shall arrive when all possibility of error or mistake is precluded, would be grossly unjust and in many cases equivalent to a denial of remedy.'

"See, also, Currier v. Poor, 155 N.Y. 344, 49 N.E. 937.

"If the plaintiffs were induced to accept the note and mortgage by false representations, they are entitled to recover damages."

Thayer v. Kansas Loan & Trust Co., supra, was a suit for an unpaid balance of a judgment against the defendant, remaining after exhausting the security given for the note on which the judgment was rendered, and which notes plaintiff purchased from the defendant. The suit was for damages on allegations that plaintiff was induced to purchase the note by defendant's false and fraudulent representations that the security theretofore given for the note was worth far more than the amount of debts against it. Limitation was pleaded against the action, and on that point the court said (page 903):

"The learned counsel for the plaintiff in error ingeniously claims that, as a false affirmation made by the party with intent to defraud the plaintiff is not actionable unless the plaintiff received or suffered damages thereby, the statute of limitations did not begin to run until after the foreclosure proceedings by the plaintiff had been concluded, and a sale of the premises made, as until then he could not tell what his damages, if any, would be by reason of the deceit and fraud of the defendants. While it is true that no action for deceit will lie unless the party defrauded has been damaged thereby, yet it does not follow that the amount of damages must first be ascertained by judicial proceedings, before the statute of limitations is set in motion.
* * *

"The contention that the statute begins to run, not from the discovery of the fraud, but from the judicial ascertainment of the amount of the loss sustained by the fraud, is not tenable. Amy v. Watertown, 130 U.S. 320, 9 S.Ct. 537, 32 L.Ed. 953; Jones v. Lemon, 26 W.Va. 629; Bennett v. Worthington, 24 Ark. 487; Murray v. Ry. Co. [C.C.A.] 92 F. 868."

Union Central Life Ins. Co. v. Jacob Scheidler, supra, was likewise an action for fraud inducing the loan of money for which a note was executed. The relief sought was for a deficiency remaining after foreclosure of the lien, securing the note. The defendant contended that the foreclosure operated as an election of remedies which precluded a recovery for fraud. The court said (29 N.E. page 1072): "These two causes of action neither accrued at the same time nor were predicated upon the same defalcation or wrong."

▪ However, these announcements in 13 Tex.Jur. sect. 7, page 73, are well supported by decisions cited:

"One who has suffered injury or damage is held to be entitled to recover, as nearly as possible, compensation for the loss or prejudice which he has suffered. The purpose of the law, in awarding actual damages, is to repair the wrong that has been done or to compensate for the injury inflicted, but not to impose a penalty; and the cardinal principle and only inflexible rule in this respect is that the person injured shall receive a compensation which is commensurate with his loss or injury, and no more."

Also paragraph 25, page 96:

"The fundamental rule is that the defendant may be held liable for such consequences of his conduct as he could have or ought to have foreseen or anticipated, the basis of responsibility being the same in cases of tort as it is in cases of breach of contract. The Supreme Court has expressed the general doctrine thus:

" 'In case of tort the rule is, the wrongdoer shall be answerable for all the injurious consequences of his tortious act, which according to the usual course of events and general experience were likely to ensue, and which therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated.' [McAllen v. Western Union Tel. Co., 70 Tex. 243, 7 S.W. 715]."

Manifestly the award of nominal or partial damages only, would defeat the purpose of the law so expressed.

The gist of the representation made to Miss Foley to induce the loan was that the property hypothecated would be sufficient to secure her against loss in the future if it could not be collected from Davis. He knew at that time that the two surface leases hypothecated could be determined and rendered worthless by the failure of Davis to pay monthly rentals of $166 on one and more than $200 on the other, and also as the result of failure of Davis to pay occupation taxes, as later happened.

The legal effect of the findings of the jury, that at the time Mary Foley made the loan in question, appellee Quinn represented to her that collateral security worth $20,000 would be placed on the loan; that said representations were untrue; that Mary Foley believed them to be true and relied thereon, and did not act independently of the representations made by Quinn, with respect to the securities which she was obtaining for the loan, and that she suffered damages in the sum of $2,500, by reason of the failure to have collateral security of the value of $20,-000 pledged for the loan, was that the misrepresentation on the part of Quinn was the proximate cause of the $2,500 damages, the amount remaining unpaid when she exhausted the last security by foreclosure on February 4th, 1934, which necessarily included findings that Miss Foley was induced to make the loan by reason of the misrepresentation and that Quinn ought reasonably to have foreseen such loss as a probable consequence of that misrepresentation.

The provisions of article 2185, R.C.S., that all objections not made and presented to the court's charge to the jury at the time of the trial shall be considered as waived, has special application here, in that appellee has not presented any cross assignment to the submission of any of the issues.

We conclude that the measure of Miss Foley's damages resulting from Quinn's misrepresentation inducing her to make the loan, for which recovery was sought under the first count in the petition, was the unpaid balance of $2,500, left after she had exhausted the last security given for the loan, and that her cause of action under that count for the misrepresentation did not accrue until February 4th, 1934, at which time she bought in the last remaining security under foreclosure proceedings; especially so in view of the fiduciary relation between Quinn and Miss Foley, as reflected by the jury's finding in answer to issue No. 20, that prior to the time the loan was made Quinn agreed in behalf of Mary Foley to look after the security for the loan. 25 Corpus Juris, p. 1119; 27 Corpus Juris, par. 171, p. 48; 20 Tex.Jur. par. 4, p. 11. And therefore the failure of the court to award a recovery for $2,500 damages under the first count in the petition was reversible error, as insisted in assignments of error presented by appellants.

Nor was there any finding of the jury that, in making the representation as to the value of the security, Quinn acted in good faith and with no other intention except as a friendly act to assist Miss Foley to make an advantageous loan, and not as her agent, as testified by him. And the record shows no request of appellee to submit that issue. 20 Tex.Jur. pp. 42-49, inclusive.

Moreover, the findings of the jury in answer to issue 20, that prior to the time the loan was made appellee Quinn agreed with Mary Foley to look after the security for the loan; in answer to issue 11, that by the use of ordinary diligence he could have found out the values of the properties hypothecated to secure the loan; in answer to issue 12, that he failed to use ordinary care to make investigation relative to the value of the property pledged to Mary Foley to secure the loan of $5,000; in answer to other issues, that Mary Foley was induced to make the loan upon Quinn's representation that the collateral security that would be placed on the loan was worth $20,000, which was in fact worth only $10,-000, and that she suffered damages in the sum of $2,500 by reason of the failure to have $20,000 worth of collateral security placed on the loan, and which latter finding necessarily included the further finding that such loss should reasonably have been foreseen by Quinn when he agreed with Miss Foley to look after the security prior to the time of the loan; entitled plaintiffs to a recovery of $2,500 as damages claimed in the second count in the petition. Our conclusion being that such was the measure of plaintiffs' damages under the second count in the petition, and that the cause of action thereon did not accrue until February 4th, 1934, when the last of the securities was exhausted, as above stated. And the failure of the court to award damages under that count was fundamental error, of which we must take cognizance, in the absence of

any assignment presenting that contention. 3 Tex.Jur. sect. 571, p. 808.

■ Revised Civil Statutes, Article 2211, Vernon's Ann.Civ.St. art. 2211, reads in part: "The judgments of the Court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled."

And, according to the text in 25 Tex.Jur. sect. 108, page 484, and decisions there cited, it is fundamental error for the court to refuse to render judgment in compliance with the provisions of that statute.

See also 2 Tex.Jur. par. 188, page 601, announcing the rule of liability of an agent to his principal for the negligence of the agent.

Therefore, we overrule the several contentions of the appellee, noted already, with respect to the beginning of the period of limitation pleaded, and the measure of recoverable damages sought in both counts in the petition.

■ Plaintiffs' plea of estoppel against Quinn's plea of limitation, by reason of his act in writing the letter pleaded and the writing of which he admitted on the trial, was not determined by any jury finding; nor was there any allegation in the pleading that Miss Foley was thereby induced to refrain from institution of the suit at any earlier date. Although the letter and all attendant circumstances could be looked to by the jury in determining the issues presented in both counts in plaintiffs' petition. 20 Tex.Jur. par. 108, page 158.

■ If there be lack of harmony between the decisions of the Supreme Court, in Houston Water-Works v. Kennedy, 70 Tex. 233, 8 S.W. 36, which was followed in American Indemnity Co. v. Ernst & Ernst, supra, and the later decisions of the Supreme Court, noted above, which we have followed, we believe the latter decisions should control this case.

For the reasons noted the judgment denying plaintiffs a recovery against defendant, Quinn, is reversed and judgment is here rendered in their favor against him on the verdict of the jury for the amount of $2,-500, with interest thereon at the rate of six per cent per annum from the 21st day of December, 1936, the date of judgment in the trial court, and costs of suit in the trial court and in this court. The judgment rendered in favor of defendant, Davis, is left undisturbed, but the same shall not operate to plaintiffs' prejudice in any action they may take in the future to enforce payment of the notes he executed for the loan; although, of course, plaintiffs cannot have a double recovery for the same loan.

### On Motion for Rehearing.

■ We quote the following from 13 Tex.Jur. p. 69: "Nominal damages are a sum which is held to be recoverable where a legal right is to be vindicated against an invasion which has produced no actual present loss of any kind. Wherever the breach of an agreement or the invasion of a right is established, the law infers some damage to the injured party, even if none be proved, and will award a nominal sum." And usually one dollar is the amount fixed for nominal charges.

In 8 Ruling Case Law, par. 5, page 426, this is said: "As a general rule nominal damages, as such, are recoverable only in cases where damages are not the gist of the action, that is, in cases primarily designed to secure the plaintiff's right from invasion; and so it is, where the sole object of the action is the recovery of damages, a failure to prove substantial damage is a failure to prove the substance of the issue. In such a case, where there is no inherent personal or property right to determine, the plaintiff is not entitled to nominal damages, even though the evidence might justify a verdict for nominal damages if such right were involved." See also 17 C.J. p. 720.

In 37 C.J. par. 154, page 811, in discussing the statute of limitations, this is said: "Where a party's right depends upon the happening of a certain event in the future, the cause of action accrues and the statute begins to run only from the time when the event happens."

■ The actual damages sought for the alleged fraud of defendant, Quinn, were the gist of plaintiffs' suit. Their accrual was contingent upon the happening of future events, and were not susceptible of proof at the time the fraud was committed, and therefore could not have been recovered if the suit had been instituted immediately upon the perpetration of the fraud. The suit was not for invasion of any personal or property rights of plaintiffs. Nor could they have two separate causes of action for the alleged fraud, one for nominal and the other for actual damages. 1 Tex.Jur. par. 57, p. 674.

■ And if a suit for damages founded on fraud be maintainable for nominal damages alone, then a judgment therein would extinguish the entire cause of action for such fraud, and bar another action for actual damages resulting from the same fraud, even though at the time of rendition of the judgment those actual damages had not then been suffered and could not reasonably have been anticipated. 26 Tex.Jur. par. 353, p. 11; par. 361, p. 29; par. 366, p. 42; par. 430, p. 160.

■ If, in a suit of this character, nominal damages are recoverable at all, then the right thereto would be incident to a suit for actual damages and would be recoverable in the event of failure of proof of actual damages; and allegations of actual damages would be necessary to confer jurisdiction of the court to award nominal damages only. Miller v. Moore, Tex. Civ.App., 111 S.W. 750; 15 C.J. p. 755.

■ The general announcement in different decisions that the running of the statute of limitations against a suit for damages for fraud begins immediately upon the perpetration of the fraud, because nominal damages would at all events be then recoverable, we believe, has application only when there is a proper basis for nominal damages in allegations of actual damages, and in an amount within the jurisdiction of the court in which the suit is instituted.

The motion for rehearing is overruled.