Submitted on briefs June 29, reversed October 23, rehearing denied November 27, 1917.

## BRIDENSTINE *v.* GERLINGER MOTOR CAR CO.

(168 Pac. 73, 972.)

**Principal and Agent—Agency—Question for Jury.**

1. Evidence *held* not sufficient to warrant submission of the question of agency to the jury in an action for fraud.

**Principal and Agent—Relationship—Proof—Circumstances—Declarations of Agent.**

2. Though an agency can be proved by circumstances and the course of dealing between the parties, the mere declarations of an alleged agent are not competent testimony.

Trial—Reception of Evidence—Checks—Laying Foundation.

3.  It is not competent to ask questions as to the contents of a check without first introducing the check in evidence.

Evidence—Principal and Agent—Relationship—Hearsay—Statements of Agent.

4.  Testimony that H. said "he would have to go [to defendant] and get his commission" was incompetent as hearsay and also as a declaration of agency, being introduced to show agency of H. to defendant.

Fraud—Questions of Fact—Conflicting Evidence.

5.  Where evidence as to making of fraudulent representations is conflicting, the question is for the jury.

Fraud—Notes and Mortgages—Injury from Fraud.

6.  Where plaintiffs were induced to accept a note and mortgage by false representations, they are entitled to damages and to prove the amount thereof, although the mortgagor is not in default.

[As to action to recover for false representations, see note in 18 Am. St. Rep. 555.]

Evidence—Hearsay.

7.  In an action for false representations as to value of a note and mortgage, testimony as to a statement of a person who had inspected the land that "the security was not sufficient" was hearsay.

Fraud—Evidence—Knowledge of Falsity.

8.  In an action for fraudulent representations inducing an exchange of property for a note and mortgage, evidence of the value of property given by defendants for the note and mortgage, the value of which was alleged to have been falsely represented to plaintiff, was admissible to show knowledge of defendants of the falsity of their representations, but not to show the value of the note.

Evidence—Relevancy—Value of Property.

9.  Testimony as to what witness sold a truck for or what he was trying to sell for was not proper to show the value of the truck.

Evidence—Hearsay—Value of Note or Mortgage.

10.  Letters received from the owner of mortgaged land, who had not signed the note or mortgage, asking for an extension of time, was incompetent to show the value of the note or mortgage in an action for fraud.

## ON PETITION FOR REHEARING.

Trial—Evidence—Instructions.

11.  In an action for false representations as to the value of a note and mortgage, the question whether defendant company made such representations through a certain person was improperly submitted to the jury, where there was no evidence that he was the company's agent.

Appeal and Error—Reversal—Erroneous Instruction.

12.  In such case, where it could not be determined from the record whether the jury based its verdict against defendant solely on a find-

ing that it made false representations through its agents, or through another not shown by the evidence to be its agent, the judgment would be reversed.

Evidence—Verdict—Conjecture.

13. Verdicts must be supported by evidence, and cannot stand when founded only on supposition, speculation and conjecture.

From Clackamas: JAMES U. CAMPBELL, Judge.

In Banc. Statement by MR. JUSTICE HARRIS.

The defendants, Gerlinger Motor Car Company, a corporation, E. E. Gerlinger, and F. P. Coulter appealed from a judgment obtained against them by the plaintiffs David N. Bridenstine and Phebe S. Bridenstine, his wife, in an action for damages alleged to have been sustained by reason of fraudulent representations inducing an exchange of properties. David N. Bridenstine owned a hundred acre farm in Clackamas County. The Gerlinger Motor Car Company owned two houses and lots in Multnomah County, one of which for convenience will be referred to as the Waverly lot and the other as the Montavilla lot. The corporation also owned a note executed by Myron E. Butler on April 20, 1911, for $2,500 with interest at the rate of 7 per cent per annum payable to the order of Eva D. Carpenter at Mosier, Oregon, the principal to be paid on or before five years after date. The note stipulated that interest should be paid annually and if not so paid both principal and interest were to become immediately due and collectible at the option of the holder of the note. No payments had been made upon the principal, but four different indorsements showed that interest had been paid to April 20, 1914. Eva D. Carpenter and James E. Carpenter had indorsed the note by signing their names on the back of it. This note was secured by a mortgage on 160 acres of land in Jefferson County, State of Washington. By a deed expressing a consideration of $5,500 and dated

April 19, 1911, Eva D. Carpenter and her husband conveyed the Jefferson County land to Myron E. Butler who gave his note in part payment and secured the note by a mortgage on the land. The Carpenters assigned the note and mortgage to the Gerlinger Motor Car Company in payment for an auto truck and a five-passenger automobile. The Bridenstines on the one side and the Gerlinger Motor Car Company on the other side agreed to exchange properties and on about March 13, 1915, the agreement was carried out by the Bridenstines conveying the Clackamas County farm to the Gerlinger Motor Car Company and by the corporation transferring the Waverly and Montavilla lots, the note and the mortgage to the Bridenstines. The Gerlinger Motor Car Company indorsed the note without recourse. E. E. Gerlinger is the general manager of the Gerlinger Motor Car Company and F. P. Coulter was employed by the corporation. C. C. Hargroves was a real estate broker. The Jefferson County land is distant more than two hundred miles from the residence of the Bridenstines. The plaintiffs did not inspect the land in Jefferson County.

The Bridenstines filed their complaint on September 15, 1915, alleging that they had been induced to make the exchange by reason of false representations made by E. E. Gerlinger, F. P. Coulter and C. C. Hargroves who it is alleged were agents of the corporation. The plaintiffs aver that the defendants represented that the company had paid the full consideration of $2,500 for the note and mortgage; that the note and mortgage were gilt-edged securities for the sum expressed in the note; that the Carpenters, who had indorsed the note, were the owners of a large amount of real estate reasonably worth thirty or forty thousand dollars; that the land in Jefferson County was of the reasonable

value of $5,500, was occupied and farmed and thirty-five acres of the land were in a good state of cultivation; that the note and mortgage were of the full cash value expressed in the note; and that a certain gas range and other property in the Waverly house, valued at $40, belonged to the corporation. The plaintiffs aver that the truth is that the Gerlinger Motor Car Company gave a second-hand auto truck, worth not to exceed $1,000, for the note and mortgage; that the note and mortgage were not worth more than $500; that the Carpenters own only "a small amount of real estate," and that they were not and are not now financially responsible for any sum of money; that the Jefferson County land was not and is not worth more than $1,000, was not occupied or farmed and that no part of it is in cultivation or in a condition to be cultivated; and that the gas range and other property in the Waverly house did not belong to the corporation. The plaintiffs alleged that in the exchange of properties they had been damaged in the sum of $2,155 on account of the note and mortgage and the further sum of $40 on account of the property in the Waverly house. A trial by jury resulted in a verdict and judgment awarding the plaintiffs the sum of $700.

REVERSED. REHEARING DENIED.

For appellants there was a brief over the name of *Mr. Maurice W. Seitz.*

For respondents there was a brief over the names of *Mr. A. S. Dresser, Mr. E. A. Webster* and *Mr. W. A. Dimmick.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The twenty-three assignments of error may be arranged in three groups. Some of the assignments of

error depend upon the contention of the defendants that incompetent evidence was received in support of the allegation that C. C. Hargroves was acting as an agent of the Gerlinger Motor Car Company and that there was not enough evidence to authorize the court to submit the question of the agency of Hargroves to the jury; other assignments of error arise out of the claim that there was not sufficient evidence to support the charge of fraud; and the remaining assignments of error relate to evidence concerning the value of the note and mortgage.

The Bridenstines had listed their farm with Hargroves & Sons, real estate brokers in Portland, Oregon, who were authorized to find a purchaser. C. C. Hargroves was one of the three members of Hargroves & Sons. The brokers placed an advertisement in a paper giving a brief description of the farm. The advertisement came to the notice of F. P. Coulter and he then called at the office of Hargroves & Sons. As a result of the visit Coulter and C. C. Hargroves went out to the farm and looked over the premises. The next day David N. Bridenstine went to Portland and saw C. C. Hargroves who told him that the Gerlinger Motor Car Company would trade the Waverly and Montavilla lots and the note and mortgage for the farm. On the following day David N. Bridenstine made a second trip to Portland and in company with C. C. Hargroves visited the two lots and inspected the premises. Either on that day or a day or two afterwards David N. Bridenstine and E. E. Gerlinger signed a contract, dated February 20, 1915, for the exchange of properties. On the following Sunday Gerlinger and Coulter, in company with their wives, and C. C. Hargroves drove from Portland to the farm and looked over the premises. The following Monday

David N. Bridenstine sent word to C. C. Hargroves that he was not willing to complete the proposed exchange and at that time or on a subsequent day assigned as a reason for his unwillingness to consummate the agreement the fact that he was in default in the interest on two mortgages which encumbered the farm, that his taxes had not been paid, that there was an unpaid judgment against him and that he had to have some money in the exchange so that he could pay interest, taxes and the judgment. A few days afterwards C. C. Hargroves called on Bridenstine and according to the testimony of the latter suggested that Hargroves be permitted to see what he could do towards effecting an exchange. A short time afterwards Bridenstine called on Hargroves in Portland and, while there is a conflict in the testimony as to when, where and how often the parties met, it is sufficient to say that they finally agreed to exchange properties. The agreement was subsequently consummated by the Bridenstines deeding the Clackamas County farm to the Gerlinger Motor Car Company subject to a $2,500 mortgage held by the State Land Board and a second mortgage referred to in the record as the Traxler & Haynes mortgage. Gerlinger paid the interest then due on both mortgages; and there is also some more or less uncertain and indefinite evidence relating to other sums paid by Gerlinger. Coulter testified that he showed the Waverly and Montavilla lots to C. C. Hargroves before Hargroves told Bridenstine what properties the Gerlinger Motor Car Company proposed to offer in exchange for the farm; and this witness further stated that the lots were inspected by Hargroves so that the latter could explain to Bridenstine what the Gerlinger Motor Car Company had to offer. Luby Hargroves, one of the mem-

86 Or.—27

bers of Hargroves & Sons, testified that the Gerlinger Motor Car Company had never listed any property with Hargroves & Sons and that the firm did not at any time represent the Gerlinger Motor Car Company or E. E. Gerlinger or F. P. Coulter, although the witness did say that they represented the defendants as "mediator." At the time of the trial C. C. Hargroves was in Idaho where he was engaged in business; and he did not appear as a witness. This narrative, although consisting of general statements of the evidence, is sufficient to enable us to examine the errors assigned by the defendants.

1. It is admitted by all parties that C. C. Hargroves acted as an agent of the Bridenstines. The plaintiffs alleged, however, and the defendants denied that Hargroves acted as an agent of the Gerlinger Motor Car Company. Each of the plaintiffs was permitted to testify that Hargroves had made certain representations, in the absence of the defendants, concerning the note and mortgage, the Jefferson County land and the Carpenters. The plaintiffs proceeded upon the theory that Hargroves was an agent of the Gerlinger Motor Car Company and that therefore the latter would be liable for any misrepresentations inducing the exchange. While they concede that the company would be liable for misrepresentations made by Hargroves if he acted as agent of the company, the defendants argue that they were prejudiced by the admission of incompetent evidence offered by the plaintiffs to support the allegation of agency, and that, after the incompetent evidence is eliminated, there is not enough competent evidence remaining to warrant the submission of the question of the agency of Hargroves to the jury. David N. Bridenstine testified that E. E. Gerlinger paid Hargroves a commission.

The inference left by a reading of the record is that Bridenstine had no knowledge of the actual payment of a commission by Gerlinger except the knowledge gained from the hearsay statements of Hargroves made in the absence of the defendants. Gerlinger testified that Hargroves stated, in the presence of Bridenstine when the final agreement was reached, that Bridenstine had agreed to pay a commission of $500, "and he thought that inasmuch as, Bridenstine was so hard up I ought to pay half of it, and I agreed to pay half of it myself." Referring to the time when the parties finally agreed to exchange properties and when Gerlinger, David N. Bridenstine, Coulter and others were present, the defendant Coulter testified that:

"Mr. Hargroves said, being as Mr. Gerlinger was trading property for the farm that he thought it nothing more than fair to pay part of the commission and that would help put the deal through."

If Gerlinger agreed to pay one-half of the commission which Bridenstine had stipulated to pay to Hargroves then Gerlinger only agreed to pay one half of a debt incurred by Bridenstine, and it would not amount to an agreement to pay Hargroves for services performed as the agent of the Gerlinger Motor Car Company. If the transaction was as testified by Gerlinger and Coulter the relation of principal and agent did not exist between the Gerlinger Motor Car Company and Hargroves. Thus far, therefore, the plaintiffs have failed to offer sufficient evidence to warrant the submission of the question of agency to the jury. The only additional evidence is found in the testimony of David N. Bridenstine. He told the jury that on the day the deeds were exchanged he made a mortgage for $500 on the Montavilla lot. He said that the mortgage

was made to cover the commission he owed Hargroves, and a check that Hargroves had received from Gerlinger and turned over to the witness, and also some cash furnished by Hargroves. The mortgage was delivered after Bridenstine had received the deed to the Montavilla lot, although the deed and the mortgage were delivered on the same day. Bridenstine was asked if he knew "who had those lots for sale at the time when they offered to you," and he answered thus:

"Hargroves told me he had them for sale, that he represented both parties and drawed a commission for both parties, only the 500—when I put the $500 loan on the Catherine addition house I made the loan— Hargroves made the loan—and he had to get Mr. Gerlinger's check to make me the loan with. The loan went through my hands."

2–4. Bridenstine testified that Hargroves "let me have the check he got from Mr. Gerlinger" and over the objection of defendants was permitted to tell about the contents of the check and also that Hargroves "told me he would have to go and get his commission before he could make me the loan." When Bridenstine referred to the check given him by Hargroves he was referring to a transaction that occurred after the exchange of properties had been completed by the delivery of deeds; and when the witness spoke of Hargroves saying that "he would have to go and get his commission" he spoke of a declaration made by Hargroves after the exchange had been consummated. The importance of the testimony given by Bridenstine is apparent, because without it there was not enough testimony to warrant the submission of the question of agency to the jury. It is true that an agency can be proved by circumstances and the course of dealing

between the parties: *Co-operative Copper Co.* v. *Law,* 65 Or. 250, 253 (132 Pac. 521); but it is also true that it is a well-established rule that the mere declarations of an alleged agent are not competent testimony to prove the fact of agency: *Wicktorwitz* v. *Farmers' Ins. Co.,* 31 Or. 569, 575 (51 Pac. 75). Moreover, the check was the best evidence and it was not competent to ask Bridenstine about the contents without first laying the necessary foundation for secondary evidence. It was also error to permit Bridenstine to testify about Hargroves stating that "he would have to go and get his commission before he could make the loan," because the testimony was hearsay and was only one way of reciting a declaration of agency made by Hargroves. Unless upon a new trial the plaintiffs offer additional competent evidence the jury should not be asked to pass upon the question of whether Hargroves acted as an agent of the Gerlinger Motor Car Company.

5. There was competent evidence for and against the contention of the plaintiffs that E. E. Gerlinger and F. P. Coulter, while representing the Gerlinger Motor Car Company, made fraudulent representations and therefore the question of fraud was for the jury to decide.

6. The remaining assignments of error relate to the value of the Butler note and mortgage. The principal was not due until April 20, 1916, and the interest had been paid to April 20, 1914. The defendants contend that no proper demand for the payment of interest had been made when this action was commenced on September 15, 1915, and that therefore the signer of the note had not defaulted. Predicated upon the contention that a default had not occurred the defendants argue that it is impossible to ascertain whether the

note was worth less than its face value until a default occurs. It will not be necessary to decide whether the maker of the note was in default in the absence of a demand for the interest due on April 20, 1915, but it will be sufficient for the purposes of this case merely to assume that the maker had not defaulted. An attempt to prove damages might meet with more difficulties if made before default than if made after default, but a party is not prevented from making the attempt, for as said by Mr. Justice Cooley in *Briggs* v. *Brushaber,* 43 Mich. 330 (5 N. W. 383, 38 Am. Rep. 187).

"Controversies of the sort can only be determined in one way, the jury must judge of the extent of the damage by such evidence of value as the parties may be able to produce, and to postpone a remedy until the time shall arrive when all possibility of error or mistake is precluded, would be grossly unjust and in many cases equivalent to a denial of remedy": See, also, *Currier* v. *Poor,* 155 N. Y. 344 (49 N. E. 937).

If the plaintiffs were induced to accept the note and mortgage by false representations they are entitled to recover damages; *Nolte* v. *Reichelm,* 96 Ill. 425; *Whiting* v. *Price,* 169 Mass. 576 (48 N. E. 772, 61 Am. St. Rep. 307), 172 Mass. 240 (51 N. E. 1084, 70 Am. St. Rep. 262); *Bradford* v. *Neill,* 46 Minn. 347 (49 N. W. 193); *Bradbury* v. *Haines,* 60 N. H. 123.

7. C. Tellefson was interested in a mortgage on a 90 acre farm owned by plaintiffs. Bridenstine proposed to assign the Butler note and mortgage in part payment of the Tellefson mortgage. Tellefson made a trip to the Jefferson County property for the purpose of inspecting the land. Bridenstine was permitted to testify that when Tellefson returned the latter said: "The security was not sufficient, he would not take it

at all.   That he would not accept it."   This answer was hearsay and should not have been permitted to have been given.

8, 9.  There was some testimony offered by the plaintiffs and defendants concerning the value of an auto truck and an automobile given by the Gerlinger Motor Car Company to the Carpenters for the note and mortgage.   If the note and mortgage are worth the value expressed in the note it would make no difference whether the Gerlinger Motor Car Company gave less than $2,500 for the note and mortgage.   It was competent, however, for the plaintiffs to offer testimony concerning the auto truck and the automobile for whatever such testimony might be worth upon the issue of the alleged knowledge of the alleged falsity of the alleged representations concerning the value of the note and mortgage.   James E. Carpenter testified that he sold the auto truck and was asked how much he got for it and was permitted to answer that he received $150. The same witness was asked if he knew the value of the automobile and he was permitted to answer thus: "We have it up for sale for $500 and I can't sell it for that."   Both answers were clearly objectionable.

10.  H. A. Webster wrote a letter dated April 23, 1915, in behalf of the Bridenstines to Myron W. Davis of Boise, Idaho, telling him that the signer was informed that Davis was the present owner of the Jefferson County land and calling attention to the fact that interest was due and unpaid and requesting Davis to remit the amount.   Under date of May 4, 1915, Davis answered the letter acknowledging his ownership of the Jefferson County property and requesting Bridenstine to grant additional time for the payment of accrued interest.   Davis did not sign the note or mort-

gage. Both these letters were incompetent and should not have been received in evidence. The judgment is reversed and the cause is remanded for a new trial.

Reversed. Rehearing Denied.

---

Denied November 27, 1917.

On Petition for Rehearing.

(168 Pac. 972.)

On petition for rehearing. Denied.

*Mr. A. S. Dresser, Mr. H. A. Webster* and *Mr. Walter A. Dimick,* for the petition.

*Mr. Maurice W. Seitz, contra.*

In Banc. Mr. Justice Harris delivered the opinion of the court.

The plaintiffs earnestly petition for a rehearing. The petition is supported by a reargument of the questions which were presented at the hearing, discussed in the printed briefs and decided in the original opinion. We do not deem it necessary again to review all the questions reargued in the petition. The original opinion was not even written until the entire record had been carefully read and examined by more than one member of the court. The petition does however contain an additional point not previously suggested by the plaintiffs.

11, 12. The complaint charges that the alleged false representations were made by the Gerlinger Motor Car Company speaking through its agents E. E. Gerlinger, F. P. Coulter and C. C. Hargroves. In the original opinion we held that there was sufficient evidence to go

to the jury upon the question of whether false representations were made by the corporation through its representatives E. E. Gerlinger and F. P. Coulter, but that there was no competent evidence to prove that Hargroves acted as an agent for the Gerlinger Motor Car Company; and that, therefore, the trial court erred in asking the jury to decide whether false representations were made by the company through Hargroves as its agent. The charge given by the trial judge permitted the jury to find for the plaintiffs if the jury found that the company made false representations through Gerlinger and Coulter or through Hargroves. The question of whether the company made false statements through Gerlinger and Coulter was properly submitted to the jury; but, the question of whether such statements were made by the company through Hargroves was improperly submitted to the jury because there was no evidence, except clearly incompetent evidence, concerning the allegation that Hargroves was an agent of the corporation. If it could be ascertained from the record that the jury based its verdict solely upon a finding that the company spoke falsely through its agents Gerlinger and Coulter or either of them, and not through Hargroves, then it could be argued with reason that a lack of competent evidence concerning the alleged agency of Hargroves should not work a reversal. But there is no way of knowing whether the jury found the company liable on account of representations made by Hargroves or on account of statements made by Gerlinger and Coulter; and consequently a reversal of the judgment is the only just and practicable alternative. There are sharp contradictions in the testimony and a decision on a mere paper record would necessarily be without that intangible and not recordable but nevertheless helpful

form of evidence which so often manifests itself in the appearance of a witness and the manner in which he testifies.

13. It is strenuously insisted that there was enough competent evidence to carry the question of Hargroves' agency to the jury. Verdicts must be supported by evidence; and they cannot stand when founded only upon supposition, speculation and conjecture. As we read the record, the most that can be said for the verdict, if the incompetent evidence is first eliminated and if it is then assumed that the verdict rests upon a finding that Hargroves was an agent of the company, is that it was founded upon speculation and conjecture: *Spain* v. *Oregon-Washington R. & N. Co.*, 78 Or. 355, 369 (153 Pac. 470); *Parmelee* v. *Chicago M. & St. P. Ry. Co.*, 92 Wash. 185 (158 Pac. 977).

It was error to permit Bridenstine to relate the statement made to him by Tellefson; the letter addressed to Davis and the one written by him were incompetent; and yet if these were the only errors appearing in the record the judgment might be sustained. But there were other errors committed during the trial and the other errors, as pointed out in the original opinion, were prejudicial to the appellants. Our original opinion is adhered to and the petition for a rehearing is denied.                REVERSED.    REHEARING DENIED.