Argued March 3, affirmed April 19, 1972

BRIGGS ET AL, *Appellants, v.* MORGAN ET UX,
*Respondents.*
496 P2d 17

*William F. Frye,* Eugene, argued the cause for appellants. With him on the briefs were Husband, Johnson & Frye, Eugene.

*William G. Wheatley,* Eugene, argued the cause for respondents. With him on the brief were Jaqua, Wheatley & Gardner, Eugene.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, and BRYSON, Justices.

BRYSON, J.

Plaintiffs, Briggs, brought this action, based upon fraud, to recover damages against the defendants, Morgan, and John H. Richards. Plaintiffs contend they were induced to sell a 22-acre parcel of real property by reason of fraudulent misrepresentations on the part of the defendants. After the plaintiffs rested, the court, on motion, granted an order of involuntary nonsuit in favor of the defendants Morgan. Richards filed a general denial to plaintiffs' complaint but made no appearance at the time of trial. Judgment was entered in favor of the plaintiffs against Richards, who is not a party to this appeal.

Plaintiffs appeal, assigning as error, the trial court's order allowing Morgan's motion for involuntary nonsuit; excluding evidence of subsequent sales; and overruling demurrers to Morgan's amended answer which set up an affirmative defense. Our disposition of plaintiffs' first assignment of error obviates consideration of the last two assignments of error. Plaintiffs' counsel, at the time of argument, in answer to a question from this court, stated that if there was not sufficient evidence to take the case to the jury the last two assignments of error were not applicable.

The first issue on appeal, as stated by the plaintiffs, is "[w]hether there was sufficient evidence of an agency relationship between defendants Morgan and defendant Richards to make the issue of defendant Morgans' liability for the jury. Or, * * * whether the court erred in allowing the motion of defendants Morgan for a judgment of involuntary nonsuit * * *." After reviewing the evidence and assuming, arguendo, that defendant Richards acted fraudulently in his dealings with plaintiffs, we agree that Morgan could not be guilty of fraud or deception unless Richards was acting as his agent in acquiring the 22 acres.

The facts leading up to this transaction are quite complex. Morgan owned, subject to a mortgage of $16,406, a 117-acre tract of land with improvements in Lane County, Oregon, which he desired to sell and which he valued at $117,000. Richards contacted Morgan and offered to purchase the property on an installment contract with a $10,000 down payment. Morgan rejected the offer but indicated he would be interested in trading the property, or a vendor's interest in a land sale contract, for other investment property. The land sale contract with Richards as purchaser had only been discussed at this time. Morgan then advertised to trade a vendor's interest in a land sale contract for other real property. Plaintiffs Briggs contacted Morgan concerning the trade of some real property they owned for Morgan's contemplated vendor's interest in the land sale contract on the 117 acres with Richards as purchaser. These facts were disclosed by Morgan to Briggs and they looked at each other's property. The transaction of plaintiffs' trading their property for Morgan's land sale contract with Richards as purchaser was memorialized by a handwritten memorandum dated September 25, 1966. Both parties

desired to consult with their attorneys before the final agreement was reduced to writing. Plaintiffs also desired to consult with Mr. Otis E. Holland, their certified public accountant. Mr. Holland was active in the preparation of the final documents. On direct examination he stated:

"Q   Were you active at all in the preparation of any documents running between Mr. and Mrs. Morgan and the Briggs, * * *?

"A   Yes, Mr. Briggs asked me the . . . his tax effect of the transaction, and I told him that it was my opinion that if he traded his property for the property on the McKenzie, which I had understood that Mr. Morgan had a buyer for, that he would have a nontaxable transaction, and that he could then sell the property on instalment sale, which would be to his tax advantage, and as a result of that meeting at a later time Mr. Briggs stated that he exchanged Deeds with the Morgans and that he sold the property on contract to Mr. Richards."

On cross-examination he stated:

"Q   So at the time that they were talking to you you could have either recommended that they go ahead and let Mr. Morgan sell to Richards by a Land Sale Contract, or you could say, 'No, I don't think that should be done. Let's have Mr. Morgan trade land with Mr. Briggs and have Mr. Briggs enter into the contract with Richards,' isn't that correct?

"A   Yes.

"Q   And you considered the tax consequences of each alternative, right?

"A   Yes.

"Q   Now Mr. Morgan didn't indicate he had a preference or cared whether he sold directly to Mr. Richards by Land Sale Contract and then sold the contract or traded the contract to Briggs, or

whether he traded land with Briggs and let Briggs contract with Richards, did he? Did he say he wanted to do it one way or the other, or was the election done for the benefit of Mr. Briggs?

"A   The election was done for the benefit of Mr. Briggs."

Plaintiffs Briggs and defendants Morgan exchanged deeds on September 27, 1966; Briggs entered into a land sale contract with Richards as purchaser for $107,000; Richards gave Morgan his check for $10,000; Briggs paid Morgan $11,000 to balance the land trade. No fraud is alleged regarding these transactions.

Richards professed to be a developer, or subdivider, of real property. The land sale contract between plaintiffs and Richards, prepared by plaintiffs' attorney, provided:

## "ACREAGE RELEASE:

"At any time the Purchaser desires to purchase individual parcels out of the above described property and requests a warranty deed for individual parcels, it is understood and agreed that the Purchaser herein shall tender to the Vendor, $1,000.00 per acre for whatever acreage is to be released. * * * Purchaser shall prepare the legal description for any parcel they desire to be released and shall be responsible for any costs involved in surveying, platting, engineering, title work or other necessary mechanical processes in determining an accurate description for these parcels."

As early as November, 1966, Richards contacted Briggs for a modification of the original land sale contract covering the 117 acres. Several conferences were held in Mr. Holland's office with Briggs, his attorney, and Richards present. Richards wanted per-

mission to sell some of the land with no payment to Briggs in order to raise capital to complete development and sale of the remaining acreage and thereby pay Briggs's balance of the purchase price. Mr. Holland testified:

"Q Now can you tell the jury, Mr. Holland, what Mr. Richards was saying to you during this conference * * *?

"* * * * * *.

"A Well, the basic problem was that for him to get a release from Mr. Briggs of 22 acres he had to pay $22,000, and he kept contending that this 22 acres was not worth very much money * * * but he did have a sale for it, and that if Mr. Briggs would release this without payment, then he would be able to develop the rest of the property, and then he could bring his contract up to date and make the payments * * *."

On March 14, 1967, a new, or modification of the original, land sale contract was prepared by plaintiffs' attorney and executed by Briggs and Richards. The new contract permitted Briggs to have the 117 acres surveyed and divided into three parcels, payment to be made separately for each parcel, and upon payment for any parcel Briggs to deed to Richards. One of the parcels contained the 22 acres involved in this litigation and provided for payment to Briggs of $12,000 as compared to $22,000, or $1,000 per acre, as provided in the original land sale contract between Briggs and Richards. Morgan took no part in the negotiations for modification of the original contract.

Prior to March 14, 1967, Morgan contacted Richards and offered to buy 22 acres from the original 117 acres for $26,000. Morgan deposited $16,000 with Lane County Escrow Service, Inc., and agreed to cancel Richards' $10,000 check, which Morgan had

been unable to collect on, upon receiving clear title. Morgan received clear title by deed of March 14, 1967.

■ Plaintiffs allege that "defendant John H. Richards was acting as agent for and in concert with defendants" Morgan; that the sale was induced by fraudulent representations regarding location and quality of the land involved. Assuming that Richards did make fraudulent representations that were relied on by plaintiffs to their detriment, we must decide whether there is any evidence, direct or circumstantial, which would support a reasonable inference that an agency relationship existed between defendants Richards and Morgan. In this case there is no direct evidence of agency. Admittedly, "* * * an agency can be proved by circumstances and the course of dealing between the parties: *Co-operative Copper Co. v. Law*, 65 Or. 250, 253 (132 Pac. 521) ; * * *." *Bridenstine v. Gerlinger Motor Car Co.*, 86 Or 411, 420-21, 168 P 73 (1917). *Held v. Puget Sound Etc. Co.*, 135 Or 283, 287, 295 P 969 (1931).

> "One who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." Restatement of the Law (Second) 75, Agent or Supplier § 14 K.

Comment *a* of the above section states:

> "Typical situations to which the rule stated in this Section apply are * * * the purchase of land through a broker. Factors indicating that the one who is to acquire the property and transfer it to the other is selling to, and not acting as agent for, the other are: (1) That he is to receive a fixed price for the property, irrespective of the price paid by him. This is the most important * * *."

■■ In the present case there is no evidence that Richards was acting primarily for Morgan and not for himself. He was admittedly a subdivider and developer of tracts of land. Briggs was aware of this in his dealings with Richards and knew that he was short of capital. Richards was acting for himself as he received a fixed price of $26,000 for the 22 acres and paid the agreed price of $12,000 to Briggs for release and conveyance of the land. A careful review of the evidence reveals only one reasonable conclusion. The Morgans and the Briggses were buyer and seller dealing at arm's length and were looking out for their own welfare. Morgan had nothing to do with the modification, or change, of the original land sale contract. Briggs was cautious in every step in the entire transaction and was fully counseled by his own attorney and his certified public accountant. The trial court had no alternative but to grant the motion for an involuntary nonsuit in favor of defendant Morgan. " '* * * [F]raud is never presumed, and * * * it must be alleged and * * * proved by clear, satisfactory, and convincing testimony' * * *." *Blair v. McCool,* 136 Or 139, 146, 295 P 950 (1931).

■ "* * * [P]roof by 'clear and convincing evidence' means that the truth of the facts asserted is highly probable * * *." *Cook v. Michael,* 214 Or 513, 527, 330 P2d 1026 (1958). *Sheets v. B & B Personnel Systems,* 257 Or 135, 475 P2d 698 (1970); *Miller et ux v. Protrka et ux,* 193 Or 585, 592, 238 P2d 753 (1951).

A plaintiff's verdict against Morgan would have been founded upon speculation and conjecture. *Bridenstine, supra* at 426.

Affirmed.