Argued December 2, reversed December 31, 1974, petition for
rehearing denied January 28, 1975

PACKAGE CONTAINERS, INC., *Appellant, v.*
DIRECTOR'S, INC. ET AL, *Respondents.*

530 P2d 40

*Marvin S. Nepom,* Portland, argued the cause and filed a brief for appellant.

*Curtis W. Cutsforth* of Miller, Anderson, Nash, Yerke & Wiener, Portland, argued the cause and filed a brief for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, BRYSON and SLOPER, Justices.

BRYSON, J.

Plaintiff brought this action in fraud to recover damages for certain misrepresentations and undisclosed overcharges. Defendants' motion for a directed verdict was denied and the jury returned a verdict in favor of plaintiff for actual and punitive damages. On motion by defendants, the trial court set aside the judgment on the jury's verdict and entered judgment in favor of defendants. Plaintiff appeals and assigns as error the court's order setting aside the judgment and the granting of defendants' motion for judgment n.o.v.

■ Since this is an appeal from a judgment notwithstanding the verdict, we view the evidence in the light most favorable to plaintiff, and the judgment n.o.v. ought not to be granted if there is any substantial evidence to support the jury's verdict. *Austin v. Sisters of Charity,* 256 Or 179, 183, 470 P2d 939 (1970).

■ In addition, after a plaintiff's verdict, the plain-

tiff is entitled to the benefit of all favorable evidence, as well as all favorable inferences which may be reasonably drawn from the evidence. *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199 (1973). With this perspective in mind, we turn to the facts of the case.

Director's, Inc. (hereinafter Director's), is the owner of industrial property located at 336 S. E. Spokane Street, Portland, Oregon. Defendant Sol Director is an officer and shareholder of the defendant corporation and managed the property.

In 1954 Director's leased a portion of the property to plaintiff. The terms of the lease required plaintiff to pay Director's for all water consumed.

Director's leased separate portions of the property to Mrs. Neusihin Pickles (hereinafter Neusihin) in 1960 and to J. T. Burchaell in 1965 (written lease 1968) for the operation of a houseboat complex. Unknown to plaintiff, both Neusihin and Burtchaell were also required to pay Director's for all water they each consumed.

The water for all of the tenants was supplied through one main 6″ line. Plaintiff's water charges were based on readings obtained from a meter located at the head of this 6″ main line. The water charges for the other two tenants were based upon submeters which were installed on or near their respective premises, thereby enabling Director's to determine the precise amount of water consumed by Neusihin, Burtchaell, and plaintiff.

Plaintiff was not informed of these arrangements. None of the payments received by defendants from

Neusihin and Burtchaell were credited to plaintiff's account. As a result, plaintiff was charged for water used by Neusihin and Burtchaell.[1]

On November 18, 1965, plaintiff wrote to Director's and requested that plaintiff be given a 25%, rather than a 15%, credit[2] on its water charges.

In March of 1966, Director's replied:

"Thank you very much for your letter and last remittance. In regard to your remittance on the water. We are in no position to allow the 25% discount, however, we will allow it for this time only, since we feel that perhaps you have had an excessive loss do [sic] to the leakage in the street. We know that there is quite a lot of water used in your operation, and after a survey with the water bureau and the sprinkling system people, we feel that we are being quite equitable in our obsorbing [sic] 15% for the sprinkling system for the future."

In December of 1972, after receiving a water bill in excess of $6,000, plaintiff became suspicious and conducted an investigation because it was "physically impossible" to have consumed so much water. Thereupon, plaintiff discovered the submeters and waterlines[3] to the other tenants' premises and commenced

[1] Defendants' answer admits this allegation.

[2] In 1962, before the entry of Neusihin and Burtchaell as tenants, plaintiff was given a 15% credit on its water charges because of Director's' removal of a water tower that supplied water pressure for plaintiff's sprinkling system. The credit apparently served to offset subsequent increases in plaintiff's fire insurance premiums. According to the evidence, the credit had no relation to the water used by the other tenants.

[3] One submeter was found on the premises of Neusihin's building; the other submeter was found in a clump of blackberry bushes. The waterline to Burtchaell's moorage operation also served as a handrail to a gangplank. The defendant Sol Director testified that he did not participate in the installation of the submeters or select the particular location for installation.

this action. Prior to the December 1972 billing and finding the two meters, plaintiff relied on and paid for water as billed by defendants.

The defendants instructed lessees Neusihin and Burtchaell to take their water supply from the main water line, which was metered and charged to plaintiff, and to install submeters and to pay Director's for their water consumption. The City of Portland Water Bureau mailed the water bill, based on plaintiff's meter reading, to the "occupant," plaintiff, who in turn mailed the water bill to Director's. Director's periodically billed plaintiff for all the water consumed on its Spokane Street property. Director's also billed Neusihin and Burtchaell for water used per their meters and accepted the payments for such water. These payments were entered in their "miscellaneous account" records.

The plaintiff argues that fraud, by its nature, is not readily susceptible of direct proof and that it may be proved by circumstantial evidence; that defendants had a duty to disclose the true facts to plaintiff, particularly after plaintiff's letter of November 18, 1965; that defendants, in their letter of March 30, 1966, concealed the true facts as to Neusihin's and Burtchaell's use of water and blamed it on a leakage; that there is substantial evidence to support the jury verdict which found fraudulent conduct on the part of defendants.

The defendants contend that the failure of defendants to give plaintiff credit for payments made by Neusihin and Burtchaell was merely a mistake; that fraud must be alleged and proved by clear, sat-

isfactory and convincing testimony, and that there is no such evidence in this case.

Defendants rely on *Briggs v. Morgan,* 262 Or 17, 496 P2d 17 (1972). In *Briggs,* plaintiffs contended they were induced to sell real property to defendants Morgan and Richards by reason of fraudulent misrepresentations by defendants. Judgment was entered against defendant Richards but we held that plaintiff had not established that codefendant Richards was acting as agent for Morgan and therefore Richards' representations were not imputable to defendant Morgan. Morgan had nothing to do with the transaction between plaintiff Briggs and defendant Richards or the representations made by Richards. Also, Briggs was well informed of the facts by his attorney and accountant.

In the case at bar, the concealment of the facts was occasioned by defendants' actions and plaintiff had no knowledge of the true facts until December 1972.

On November 18, 1965, shortly after Burtchaell's marina became a tenant (with approximately 25 houseboats), plaintiff wrote to defendants:

"[E]nclosed is our check #5563, in the amount of $2,415.01, which is in payment of water charges inclusive of October 8, 1965.

"After analyzing our water consumption, we feel that we should have a 25% reduction on the water charges instead of the 15% which has been allowed up to the present time."

Over five months later defendants responded with their letter of March 30, 1966, stating:

"* * * We are in no position to allow the 25% discount, however, we will allow it for this time only, since we feel that perhaps you have had an

excessive loss do [sic] to the leakage in the street.
\* \* \*"

Defendant Sol Director testified:

"Q   Okay. So you told him about the leakage in the street, and you agreed to continue the 15 per cent for the sprinkling system, right?

"A   That's correct.

"Q   And you didn't tell him you had already received money from Mr. Neusihin, and Mr. Neusihin already plugged in to the meter?

"A   I did not tell him that.
"\* \* \* \* \*.

"Q   Would you tell the jury what that letter is, please?

"A   It's a letter dated October 31, 1972, and it's directed to:

" 'Watery Lane [Burtchaell's]
200 Southeast Spokane Street
Portland, Oregon 97202'

"Q   You told us you wrote the letter—
"\* \* \* \* \*.

"THE WITNESS: It's a rate—water rate—that was furnished by the Water Bureau, showing what the cost of water and sewage is.

"Q   \* \* \* And you sent that to Burtchaells, is that right?

"A   That's right.
"\* \* \* \* \*.

"Q   \* \* \* Am I correct, that Exhibit 14 points out there is a new water rate, and that they should pay Director's the new water rate?

"A   Yes.

"Q   Did you tell anybody at Package Containers that you were sending out this letter, and the money should be sent to Director's?

"A   No."

Prosser, Law of Torts 695, § 106 (4th ed 1971), speaking of representation and nondisclosure, states:

"In addition to such representations by word or conduct, which might be called definite or positive, deceit, as well as other remedies, may be based upon an active concealment of the truth. Any words or acts which create a false impression covering up the truth, or which remove an opportunity that might otherwise have led to the discovery of a material fact * * * are classed as misrepresentation, no less than a verbal assurance that the fact is not true." (Footnotes omitted.)

In *Sheets v. B & B Personnel Systems,* 257 Or 135, 145, 475 P2d 968 (1970), citing *Dahl et al v. Crain et ux,* 193 Or 207, 224, 237 P2d 939 (1951), we stated:

" 'Fraud may be predicated upon an equivocal, evasive or misleading answer calculated to convey a false impression even though it may be literally true as far as it goes.' "

■ In *Musgrave et ux v. Lucas et ux,* 193 Or 401, 410, 238 P2d 780 (1951), we established that "[a]ctionable fraud may be committed by a concealment of material facts as well as by affirmative and positive misrepresentation."

The trial court fully instructed the jury on the elements of fraud and that it is never presumed; and on plaintiff's burden of proof. The court then gave the jury the following instruction:

"If there is a duty to disclose, then fraud may be committed by intentional concealment of material facts, as well as by affirmative misrepresentations.

"In this case, where the plaintiff was required to pay to defendants under their lease for all water used by the plaintiff in or about the premises, the defendants had a duty to inform the plaintiff that

defendants were furnishing water to others, and then collecting from others for water diverted without defendants' [plaintiffs'] knowledge.

"Specific and actual intent to defraud may be established by such circumstantial evidence, if you can say that the circumstances are so strong as to constitute clear, satisfactory and convincing proof of intent to defraud."

Defendant took no exceptions to any of the instructions given.

■ The jury could have found from the evidence that defendants, notwithstanding their obligation and opportunity to disclose, never informed plaintiff of the circumstances and accepted water payments from all of the tenants and concealed this information from the plaintiff; that defendants never instructed their bookkeeper to credit plaintiff's account with Neusihin's or Burtchaell's water payments.

We believe there is sufficient evidence to support the jury's finding in accordance with the court's instructions.

Reversed with instructions to reinstate the judgment based upon the jury's verdict.