# IN THE OREGON TAX COURT

## GELDERMANN AND COMPANY, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 2000)

Gary J. Lekas, Attorney, Portland, represented plaintiff.

Elizabeth S. Stockdale, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision part for plaintiff, part for defendant rendered July 2, 1985.

## CARL N. BYERS, Judge.

Plaintiff, a Delaware corporation with its principal place of business in Chicago, Illinois, is authorized to do business in Oregon. It appeals from an opinion and order of the Department of Revenue which finds plaintiff subject to Oregon's corporate excise tax for the years 1972 through 1977. The parties have stipulated to the facts and submitted the case on briefs.

Plaintiff's primary business is the purchase and sale of commodity futures contracts for its customers on a commission basis. Plaintiff operated its own commodity commission business in Chicago and also did commission business for other associated brokers in the United States, including an associated broker in Portland, Oregon.

During the subject years, plaintiff (Geldermann) had an arrangement with Gerald E. Tucker (Tucker) of Portland, Oregon, whereby Tucker would handle sales activities and Geldermann would handle the clearing of sales or purchases of commodities futures contracts. During 1972 to 1975, all expenses of the Portland operation were deducted from gross commissions and the remainder of the commission income was split evenly between Geldermann and Tucker. Sometime in 1975 this arrangement changed and Geldermann charged a fixed commission for each futures contract and Tucker paid the operational expenses from the commissions charged the customers.

The primary issue is whether the plaintiff had sufficient nexus with Oregon to be subject to taxation pursuant to ORS chapter 317. In resolving this issue, the court must determine if Tucker was the plaintiff's agent and if the plaintiff's activities carried on by Tucker constituted "doing business" in Oregon. If this issue is determined in the affirmative, then the court must decide whether certain interest income and capital gain income was "business income" allocable to and taxable by the State of Oregon.

ORS 317.070 states that:

> " [E]very mercantile, manufacturing and business corporation doing or authorized to do business within this state * * * shall annually pay to this state, for the privilege of carrying on or doing business by it within the state, an excise tax * * *."

■ The statutory definition of "doing business" found in ORS 317.010 has remained essentially unchanged since its adoption.

> " 'Doing business' means any transaction or transactions in the course of its activities conducted within the state by a national banking association, or any other corporation; * * *."

■ "Doing business" has been judicially interpreted as a transaction(s) in the course of business engaged in for the pursuit of gain. *Dutton Lbr. Corp. v. Tax Com.*, 228 Or 525, 534, 365 P2d 867 (1961); *John I. Haas, Inc. v. Tax Com.*, 227 Or 170, 184, 361 P2d 820 (1961); *Welch Holding Co. v. Galloway*, 161 Or 515, 525, 89 P2d 559 (1939).

The defendant contends that Tucker was an agent of Geldermann and thus Tucker's activities in the State of Oregon were sufficient to constitute the plaintiff's doing business for purposes of establishing nexus. The plaintiff maintains that Tucker was doing business as an independent contractor, not as an agent, because the requisite "control" or the "right to control" by the plaintiff was absent.

The parties have stipulated that the Portland office was independently owned and operated by Tucker and that he had control over the conduct of operations at this office. It is also stipulated that when a customer wished to begin trading, the customer was required to sign an agreement with Geldermann before the account was opened and the account was with Geldermann, not Tucker.

Geldermann kept the individual customer accounts and sent confirmation of the trades and statements of the account activity from Chicago directly to each customer with a copy to Tucker.

Tucker was a vice president of Geldermann and so represented himself to his customers although no power or authority was granted Tucker by this designation. Tucker did business in Oregon under the Geldermann name even though

a change in the law and rules in the mid-1970's no longer required that Geldermann's name be used in Oregon.

Tucker's customers could remit their funds directly to Geldermann in Chicago but most of them paid their margin deposits to Tucker and funds received by Tucker were made payable and transmitted to Geldermann with no deductions by Tucker before transmitting the funds.

■     Agency can be proved by circumstances and the course of dealing between the parties. *Briggs v. Morgan*, 262 Or 17, 23, 496 P2d 17 (1972); *Held v. Puget Sound, Etc., Co.,* 135 Or 283, 287, 295 P 969 (1931); *Bridenstine v. Gerlinger Motor Car Co.,* 86 Or 411, 420-421, 168 P 73 (1917); *Co-Operative Copper Co. v. Law,* 65 Or 250, 253, 132 P 521 (1913).

■     The course of dealing between Tucker and Geldermann convinces the court that Tucker was acting as an agent of Geldermann in Oregon. Tucker operated under the Geldermann name and he represented himself to clients as a vice president of Geldermann. Mr. Tucker could not trade directly on the commodities exchanges as he was not a clearing member. Geldermann signed the agreements with clients. Geldermann opened the account for the client. Geldermann remitted statements of account directly to the client. "One of the distinctive functions of an agent, and sometimes called the primary purpose, is to bring his principal into contractual relation with third parties." *John I. Haas, Inc. v. Tax Com., supra,* at 180. 3 Am Jur2d 420, *Agency* § 3. This is precisely what Tucker did for Geldermann.

During the years in question, Geldermann conducted clearing activities for Oregon customers, both directly and at Tucker's request. During those years, Geldermann was licensed to do business in Oregon. Geldermann earned commissions on the clearing of commodity futures transactions through Tucker's and its own activities in Oregon.

■     The court agrees with defendant that the activities of Tucker and of Geldermann's own employees exceed the solicitation of sales activity held by the Supreme Court to establish sufficient nexus for the imposition of tax in *Portland Cement Co. v. Minnesota,* 358 US 450, 79 S Ct 357, 3 L Ed 2d 421 (1959). Not only were orders solicited in the instant case,

orders were accepted and funds were collected from customers.

The course of business engaged in by the plaintiff for the pursuit of gain falls squarely within the judicial interpretation of "doing business." *Welch Holding Co., supra.* Having so determined, the court must now decide whether certain interest income and capital gain income was "business income" allocable to and taxable by the State of Oregon.

■ ORS 314.610(1) defines "business income" as that "income arising from transactions and activity in the regular course of the taxpayer's trade or business."

Agreed facts Nos. 33, 34, 35 and 40 stipulate that:

"During the audit period Geldermann earned interest income on government securities that it purchased with customer funds, and with temporary excess funds of Geldermann. Securities purchased with customers' funds were not owned by any particular customer. Under exchange rules, the securities could be, and were, deposited with the exchanges as initial margin.

"When Geldermann received customer funds, if requested by the customer, Geldermann would acquire treasury bills for the customer's account. In any event, Geldermann would add the customer funds or treasury bills to the balance in Geldermann's segregated customers' account. Customer funds were not comingled [sic] with Geldermann's assets. However, Geldermann would purchase U.S. Government securities to be held for the customers' accounts, but Geldermann would retain the interest earned as allowed under federal rule. * * * Geldermann keeps a separate account on its books for its liability to each customer.

"Geldermann's exchange margin accounts consist of cash, treasury bills or letters of credit. Geldermann is required to maintain a margin account with the clearing house of each exchange in order to trade on that exchange.

"* * * * *

"During 1972-1977 Geldermann brokers, in a fiduciary capacity, received varying amounts of funds from its commodity customers for use as margin in trading commodity futures for such customers. Such funds were subject to the controls set forth in Regulations * * * of the Commodity Futures Trading Commission. * * * Regulation 1.29 allowed Geldermann to retain as its own the interest resulting from

the investment of said funds in obligations specified in Regulation 1.26. * * *

"Most of the interest income was earned on customer funds."

■     The funds on the margin account are held in trust for Geldermann's customers but regulations allow Geldermann to retain the interest resulting from said funds. Without the investments for the margin accounts, Geldermann would be unable to trade on the exchanges, unable to carry on its commodity commission business. Therefore, this interest income arises from transactions "in the regular course of the taxpayer's trade or business" pursuant to ORS 314.610(1) and meets the tests of apportionability applied in *Sperry & Hutchinson v. Dept. of Rev.*, 270 Or 329, 527 P2d 729 (1974).

It is further stipulated that "[d]uring the audit years, Geldermann earned capital gain income from trading futures contracts for its own account and by arbitrage trading. * * * This activity is separate from Geldermann's trading activity for its customers, and takes place side-by-side with that activity. The arbitrage trading is mostly a clerical function. The commodity exchanges have special rules for trading by a member on the exchange." (Agreed fact No. 36.)

Geldermann's capital gains income was from "trading on its own account." (Agreed fact No. 41.) Geldermann might have invested its profits in some other form of investment. The fact that it chose to trade in commodities for its own account while also trading in commodities for customers in its commission business does not automatically make the two activities dependent upon or contributory to the operations of each.

In an earlier case this court found that an investment advisory service and the selling of mutual fund shares offered by the same corporation were independent units. While the sales activity created taxable nexus with Oregon, the company had not received benefits provided by the State of Oregon in connection with the conduct of the plaintiff's investment advisory business in another state. The court found that the two services were not "inseparable parts of a single business." *Hamilton Corp. v. Tax Com.*, 253 Or 602, 612, 457 P2d 486 (1969).

■ Decisions in *ASARCO, Inc. v. Idaho State Tax Comm'n,* 458 US 307, 102 S Ct 3103, 73 L Ed 2d 787 (1982), and *F. W. Woolworth Co. v. Taxation & Rev. Dept.,* 458 US 354, 102 S Ct 3128, 73 L Ed 2d 819 (1982), also support the conclusion that Geldermann's trading on its own account was a discrete business activity and the capital gains derived therefrom was nonbusiness income not apportionable to Oregon. Therefore, plaintiff's capital gains income derived from trading on its own account is not sufficiently related to its brokerage business to support taxation by Oregon.

Plaintiff's claim for relief regarding the issue of capital gains income is hereby granted. Plaintiff's other claims for relief are hereby denied. The defendant's determination of corporate excise taxes assessed against the plaintiff for the tax years 1972 through 1977 shall be modified pursuant to this determination. Defendant shall submit a computation of the corporate excise taxes pursuant to the court's determination of the issues in accordance with TC Rule 67. Costs to neither party.