ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT
 I. INTRODUCTION
This matter is before the court on cross-motions for summary judgment. The tax years at issue are 2003 and 2004.
 II. FACTS
Plaintiff (taxpayer) is a corporate wholly owned subsidiary of Kohler, Inc. (Kohler). Kohler is the common parent in a federal affiliated group of corporations filing a federal consolidated return. Kohler and taxpayer also are included in an Oregon consolidated return filed under ORS 317.710 and ORS 317.715.[1] (Ptfs' 2d Am Compl ¶¶ 4, 7; Def's Ans to 2d Am Compl ¶ 1.) *Page 2 
Taxpayer is unquestionably subject to the jurisdiction of Oregon for purposes of the Oregon corporation excise tax. The status of Kohler as subject to that jurisdiction is at the heart of this case and the relevant facts in the record as to that question are as follows.
Kohler makes and sells plumbing products, some of which are sold by taxpayer. (Ptfs' 2d Am Compl ¶ 4; Def's Ans to 2d Am Compl ¶ 1.) Kohler also sells engines and power generators. (Def's Reply at 4; Ptfs' Resp at 15.) The sales activities of Kohler in Oregon are accomplished through employee sales representatives located in Oregon. Taxpayer and Defendant (the department) agree that the only activities of these employees are "protected" activities under 15 USC section 381
(Pub L No 86-272) so that they alone do not subject Kohler to taxation in Oregon.[2]
In addition to the protected activities of the sales force in Oregon, Kohler has, by contract, secured the services of distributors, as to its engine and generator products, and authorized service representatives (ASRs), as to its plumbing fixtures. These services are related to warranty repair work that Kohler is obligated to provide or pay for under contract, federal law, or both. (Ptfs' Cross-Mot for Summ J at 5; Def's Resp at 18.) *Page 3 
During the years at issue, Kohler also caused certain of its employees to come to Oregon to undertake tasks as to the business and operations of taxpayer. Those activities included providing technology assistance, conducting operating meetings, introducing new program managers, conducting accounts receivable clean up, conducting production audits, working on computer systems, checking on the progress of taxpayer's office remodel, performing balance sheet reconciliations, discussing the public relations plans of taxpayer, performing financial audit related work, performing inventory counts and performing human resources work for taxpayer. (Def's Mot for Summ J, Exs J, M-Y; Aff of Haas, ¶¶ 13,14,16,17 and 18.) During the tax periods at issue 26 employees of Kohler were engaged in such activities. (Def's Mot for Summ J, Ex J.)
 III. ISSUE
The ultimate issue in this case is whether the activities undertaken by employees of Kohler in Oregon or those undertaken by the distributors or ASRs subject Kohler to liability under the Oregon corporation excise tax, taking into account the provisions of Pub L No 86-272.
 IV. ANALYSIS
If the issue in this case is decided against taxpayer, then in determining the corporation excise tax liability of taxpayer and its affiliates subject to Oregon taxation, the payroll and sales numbers of Kohler assigned to Oregon pursuant to ORS 314.660 and ORS 314.665 will be included in the numerator of the apportionment percentages computed for the years at issue, those being the 2003 and 2004 tax years. If the matter is decided in favor of taxpayer, the payroll and sales numbers of Kohler will not be included in the apportionment factor numerators. Inclusion of the numbers of Kohler in a numerator will serve to increase the tax liability of taxpayer and certain affiliates. *Page 4 
As is so often the case, it is important at the outset to establish the matters that are not at issue in this case.
First, the fact that Kohler owns all of the stock of taxpayer and that they are members of a unitary group is not sufficient to conclude, under Oregon law, that the sales and payroll numbers of Kohler are to be included in the numerator of the relevant apportionment formula. That is the teaching of ORS 317.715(3)(b) which states in relevant part:
 "Those members of an affiliated group making a consolidated federal return or a consolidated state return shall not be treated as one taxpayer for purposes of determining whether any member of the group is taxable in this state or any other state with respect to questions of jurisdiction to tax or the composition of the apportionment factors used to attribute income to this state under ORS 314.580 or 314.605 to 314.0675."
Second, taxpayer makes no argument that a finding that Kohler is subject to taxation in Oregon would be inconsistent with the relevant provisions of the federal constitution. (See Ptfs' Reply at 1.) This concession by taxpayer is consistent with the case law developed under the Due Process and Commerce Clauses of the federal constitution and the presence in Oregon on a consistent basis of sales employees of Kohler. The presence and activities of those employees of Kohler are protected by a federal statute, Pub L No 86-272, but not by the federal constitution itself.
That said, the parties are separated by two matters. First, it appears, notwithstanding certain denials in its briefing, that taxpayer asserts that the activities of Kohler in Oregon, directly by its employees or on its behalf by distributors and ASRs do not rise to the level of "doing business" under ORS 317.010(4) so as to bring Kohler within the reach of ORS 317.070. (See Ptfs' Resp at 32-36.) *Page 5 
Second, taxpayer, without question, asserts that the activities undertaken in Oregon, directly by employees of Kohler or on its behalf by distributors or ASRs, are activities that Oregon, under Pub L No 86-272, may not rely upon to establish jurisdiction to tax. (Ptfs' Resp at 18.)
A. Taxpayer's "Doing Business" Argument
Under ORS 317.010(4), "doing business" means any transaction or transactions in the course of its activities conducted within Oregon by a corporation. Under ORS 317.018 and the case law of this court, the legislature is considered in ORS 317.070 to have extended the reach of the excise tax to the limit defined by the federal constitution.Maytag Corp. v. Dept. of Rev., 12 OTR 502 (1993); see alsoAmer. Refrig. Transit Co. v. Tax Com.,238 Or 340, 395 P2d 127 (1964) (appealed fromAmer. Refrig. Trans. Co. v. Commission, 1 OTR 429 (1963).[3]
There is no question that Kohler engaged in transactions in Oregon and therefore comes within the ORS 317.010(4) definition of "doing business." In addition, just as the activities of Kohler in Oregon do not present any federal constitutional question, they do not present any question that under ORS 317.070, Kohler is considered to be "doing business" in Oregon. Our legislature is considered to have extended its reach as far as it can without exceeding relevant federal limits.
B. Taxpayer's Pub L No 86-272 Arguments
What remains is the question of whether Pub L No 86-272 limits the reach of the Oregon tax law. As to construction of Pub L No 86-272, this court follows the federal constructional regime. Julian v. Dept. ofRev., 17 OTR 384, 388 (2004), rev'd on other grounds,339 Or 232, 118 P3d 798 (2005). *Page 6 
However, the court is also to strictly construe the statute as it trenches on that most important aspect of the sovereignty of a member state in the Union: the power to tax and thereby make possible the important government functions that in our federal system are the responsibilities and duties of the states.[4], [5]
1. The Activities of Distributors and ASRs
The court will first focus on the activities of the distributors and ASRs who perform warranty work for Kohler pursuant to contracts with Kohler. The court will assume that the distributors and ASRs are, by any relevant measure — under state law or under the provisions of Pub L No 86-272 — independent contractors, the status for which taxpayer contends.[6]
There is no question but that the activity in which the distributors and ASRs engage is activity beyond the protections of Pub L No 86-272, without regard to whether it is activity of Kohler or a person with whom Kohler contracts. This conclusion results from simply looking at the provisions of Pub L No 86-272. As to activities performed by a taxpayer, the United States Supreme Court, in its most recent decision regarding Pub L No 86-272, Wisconsin Department of Revenue v.Wrigley Co., 505 US 214, 112 S Ct 2447, 120 L Ed 174 (1992), stated that activities *Page 7 
such as warranty work, that serve an independent business purpose apart from the solicitation of orders for sales, do not qualify for immunity under Pub L No 86-272. Wrigley, 505 US at 228-229. Taxpayer does not appear to contest this point. Instead, taxpayer focuses on the nature of the relationship between the distributors and ASRs and Kohler.
Although subsection (c) of Pub L No 86-272 allows a somewhat greater scope of activity for independent contractors, the extensions are limited to actual sales in a state and the maintenance of an office in a state. That increased scope of activity does not extend to the performance of warranty work on goods sold by a taxpayer and pursuant to a contract with a taxpayer.
Taxpayer here appears to argue that there is some other type of relationship that might exist between an out-of-state seller and a person in this state, other than a customer, that somehow would permit the performance of warranty work by that other person on goods sold by taxpayer without that activity resulting in loss of immunity under Pub L No 86-272.
However, any construction of Pub L No 86-272, conducted strictly, as it must be, starts with the observation that the statute recognizes three possible ways a person may conduct activities in a state. The person may act directly (e.g. "solicitation of orders by such person"). A representative of the person may act for a person (e.g. "solicitation of orders by * * * his representative"). Finally, actions may be taken on behalf of the person by an independent contractor (e.g. "solicitation of orders * * * on behalf of such person by one or more independent contractors"). There seems to be no question that Congress felt it had described the universe of possible relationships relevant to the statute in the language it used. The activities allowed for a person, or his representative, are described in subsection (a) of Pub L No 86-272. The activities allowed for an independent contractor are described in subsection (c) of Pub L No 86-272. *Page 8 
There is not some other category of relationship that can exist and allow some other class of activity.
For purposes of this order, although the matter is by no means free from doubt, the court is assuming that the distributors and ASRs are, as to Kohler, independent contractors. However, as stated above, they conduct activities pursuant to contracts with Kohler that go beyond the activities immunized under Pub L No 86-272 for independent contractors. What then is the result?
This subject, performance by independent contractors of activities that are not immune under Pub L No 86-272, has drawn the attention of one of the leading authorities on the law of state and local taxation.See Jerome R. Hellerstein Walter Hellerstein, 1 StateTaxation § 6.25 (3d ed 2006) (Hellerstein Hellerstein). Professor Hellerstein nicely surveys the considerations and arguments, many, if not all, of which have been briefed by the parties here. He concludes that there simply is no clear answer yet on this question.Id. at 151-152.
There is no such answer in existing Oregon case law. Taxpayer cites toHerff Jones Co. v. Tax Com., 247 Or 404, 430 P2d 998 (1967);John I. Haas, Inc. v. Tax Com., 227 Or 170, 361 P2d 820 (1961) andGeldermann and Company, Inc. v. Dept. of Rev., 10 OTR 249 (1985) as somehow bearing on this question. They do not. Haas, Inc. was decided for years long before Pub L No 86-272 became law and in no way addresses the questions at issue in this case.
Herff Jones did examine whether the in-state actors involved there were independent contractors. *Page 9 
However, that investigation was in response to the argument that if those persons were independent contractors, the separate and more liberal test of subsection (c) of Pub L No 86-272 would apply.[7] This court is assuming that the distributors and ASRs are independent contractors and the Herff Jones categorization discussion is therefore irrelevant.
In Geldermann, the activities of one Gerald E. Tucker, potentially an independent operative, were discussed and analyzed. However, the court concluded that "the activities of Tucker and of Geldermann's own employees exceed the solicitation of sales activity * * *." 10 OTR at 252 (emphasis added). In addition,Geldermann involved the sale of property other than tangible personal property and the court, therefore, did not involve itself or discuss Pub L No 86-272, a statute that places limits on states only in respect of sales of tangible personal property. Geldermann is not helpful in the discussion of the issue presented in this case.
Without authoritative case law guidance, basic construction of the statute is necessary on the question of what acts of independent contractors disqualify a taxpayer from the benefits of Pub L No 86-272. At the start, it is helpful to remember that Pub L No 86-272 does not affirmatively define the activities that expose taxpayers to taxation, but rather describes certain activities that do not expose taxpayers to taxation.
On this issue, as discussed by Professor Hellerstein, two major concerns seem to be in opposition. On the one hand, Pub L No 86-272 clearly recognizes that taxpayers may undertake *Page 10 
activities in a state through an independent contractor. The statute expressly immunizes certain, but only certain, activities. The clear implication of that fact is that activities by independent contractors conducted for a taxpayer but beyond those set out in the statute lead to a taxpayer losing the protection of Pub L No 86-272. It simply is not possible to read Pub L No 86-272 as immunizing all activities of independent contractors. Had that been the intent of Congress, it would not have identified only particular activities in the section of the statute providing immunity for actions of independent contractors. Hellerstein Hellerstein, 1 State Taxation, § 6 at 149-150.
On the other hand, can it be that any independent contractor relationship with a contractor in a taxing state exposes a taxpayer to taxation on income fairly apportioned to that state? If so, a taxpayer could lose the protection of Pub L No 86-272 in a state if it contracted with a law firm, accounting firm or advertising firm in the state for the performance of certain services. Professor Hellerstein and taxpayer here set out this possibility and say this cannot be the law. SeeId. at 150; (Ptfs' Resp at 29.)
If that conclusion, that activities by independent contractors acting pursuant to contracts with a taxpayer can cause loss of immunity under Pub L No 86-272 for that taxpayer, is not the law, what constitutional or statutory or case law authority says so? Absent such authority, the court cannot reach a conclusion simply because the proposition seems extreme.[8] After all, the proposition that the United States Supreme Court recognized in Northwestern States Portland Cement Co. v. Stateof Minnesota, 358 US 450, 79 S Ct 357, 3 L Ed2d 421 (1959), as to constitutionally sufficient nexus was considered so extreme that Congress felt bound to act to *Page 11 
modify it by the adoption of Pub L No 86-272. But the conclusion of the court was not the law simply because it appeared to some to be extreme.
No Oregon constitutional or statutory provision says that activity of an independent contractor acting pursuant to a contract with an out-of-state seller of goods is insufficient to expose the out-of-state seller to Oregon's tax jurisdiction or the reach of the tax statutes that have been enacted. Nor, as discussed above, does any Oregon case justify such a conclusion. To the contrary, the AmericanRefrigerator Transit Co. case stands for the proposition that purposefully availing oneself of the economic milieu of the state of Oregon provides adequate federal constitutional basis for taxation in such an instance.[9] Further, ORS 317.018, 317.070 and decisions such as Maytag Corp. v. Dept. of Rev. indicate that nothing in Oregon statutory law leads to the result that Kohler is immune from taxation in Oregon on the facts of this case, even considering the distributors and ASRs to be independent contractors.
Federal constitutional law presents no barrier either, as recognized by taxpayer. The United States Supreme Court has recognized that the use of contractors as opposed to employees is a distinction of no constitutional significance, when the activities of the contractor enable a taxpayer to establish or expand a market in a state.[10]Scripto, 362 US at 211-212. Nor is there *Page 12 
any federal case authority interpreting Pub L No 86-272 as affording relief to taxpayers on the facts of this case.
Nor is the fact that the warranties involved may be required by another federal law of particular significance. The requirements of the Magnuson-Moss Warranty Act, 15 USC 2301-2312, may be analogized to a sand trap or water hazard on a golf course. The federal warranty statute is simply a feature that the player must accept in playing the game — and in this case the game is played in Oregon. The use of a contractor by Kohler is like the choice of club by the player, done to address the realities on the course the player has chosen to play (here, the need or requirement to provide warranty coverage and service). However, Pub L No 86-272 does not say that activities undertaken to comply with federal warranty law, as to Oregon customers, are not to be considered in the Pub L No 86-272 analysis.
The court is left only with Pub L No 86-272. Does it say that if a taxpayer enters into a contract with an independent contractor, that choice comes without potentially adverse consequences if the activities of the contractor in a state exceed what is allowed under Pub L No 86-272? No. In fact, by specifying certain activities that will not cause loss of immunity, the statute clearly implies that some independent contractor activities will result in loss of immunity. Importantly, as to the task of a court in applying the statute, nor does Pub L No 86-272 provide any principles, tools, tests or guidelines to be used to define some category of "permissible" activities, beyond those stated expressly in the statute, in which independent contractors may engage. *Page 13 
Given both what Pub L No 86-272 says about independent contractors and what it does not say, the court is of the opinion that the statute cannot protect Kohler in this case, for the reason that the activities of the distributors and ASRs extend beyond activities allowed by the statute.
The court concludes that what some say cannot be the law is, in fact, the law — at least for now.[11] Unless one wishes to do so, one need not read this order as opening the flood gates on the independent contractor question. The activities of these contracting parties acting in Oregon are not for limited legal, advertising, or accounting services of the type that seem to present difficulty in analysis. If this result is unacceptable to those who are constitutionally charged with making tax law, at either the state or the federal level, those legislative branches may act to change the result. It has happened before. Faced with the possibility that the reach of its tax statutes might scare off needed economic activity, the Oregon legislature has acted to specifically exempt activities such as the purchase of certain products in Oregon or the extension of credit to Oregon borrowers. See
ORS 317.010(4) and ORS 317.057 (exempting from Oregon tax, respectively, certain purchasing activity relating to Oregon exports and certain activity of out-of-state lenders). The legislature could stay its tax hand in respect of taxpayers who only contract with Oregon attorneys, accountants, or other specified types of independent contractors.
In addition, of course, Congress has shown on many occasions since its maiden voyage on this ocean — the adoption of Pub L No 86-272 itself — that it may act legislatively to limit the taxing power of the states. It may choose to do so again if, in the opinion of federal legislators who must respond to both the push of the federal interests and the pull of state interests, the use of independent contractors needs protection from the revenue agencies of the states. *Page 14 
Absent such legislative action or a definitive ruling of an authoritative tribunal however, it is not this court's role to give a broad reading to the express and limited language of Pub L No 86-272. Federal immunity is Kohler's only possible refuge and it does not, in the opinion of this court, exist.
Although this conclusion would end the matter, the court considers that it may be helpful to consider one of the other bases upon which the department defends its actions.[12] That basis is the nature and scope of activities undertaken in Oregon by employees of Kohler.
2. Other Activities of Kohler Employees
During the years in question, the uncontested facts in the record show that employees of Kohler were present in Oregon on a non-trivial number of occasions undertaking work that was likewise non-trivial. The scope of that work and the number of visits was more than could be encompassed within the de minimis exception recognized by Wrigley for trivial in-state activity by persons otherwise within the scope of immunity afforded by Pub L No 86-272. Taxpayer argues that the activities of Kohler employees in Oregon during the years at issue were not beyond the limits of subsection (a) of Pub L No 86-272. (Ptfs' Resp at 30.)
Taxpayer advances three arguments in this regard. First, it argues that activities had to be, but were not, "business" activities. Second, although perhaps a variation of the first argument, taxpayer argues that what it characterizes as "unitary oversight activities" cannot be taken into account in the application of Pub L No 86-272. Finally, taxpayer argues that Oregon must act as to taxpayer consistently with the approach it takes under its "throw-back" rule — with the result that the activities here are not counted against Kohler. ~~ 15 *Page 15 
C. Taxpayer's Business Activity Argument
It is the case that Pub L No 86-272 does refer to "business activities" occurring in a state. And, as taxpayer points out, the court in Wrigley noted the reference in Pub L No 86-272 to "business activities" rather than just "in-state acts." Wrigley,505 US at 226. However, that distinction was drawn by the court in the process of establishing that Pub L No 86-272 must be read as addressing a continuum of activities and not just a single act of "solicitation." Otherwise, as the court observed, the act of driving a car in the state to a potential customer location would explode the immunity and render Pub L No 86-272 a practical nullity. Id. The focus of the court in this regard was, however, clearly on the word "activities" and the spectrum of activities and not on the adjective "business."
Taxpayer, incorrectly concluding that only "business" activities are to be counted, goes on to propose a definition of "business." The definition taxpayer proposes encompasses only acts or activities done for the purpose of establishing or expanding a market. As to this argument, it is enough to observe that there is not one word or suggestion in Pub L No 86-272 supporting what would be this limitation of Pub L No 86-272 as being applicable only to acts or activities that are undertaken to establish or maintain a market. But, more can be said.
Taxpayer's concept that Pub L No 86-272 allows, somehow, "non-business" activities to be undertaken by taxpayer directly, is developed by taxpayer from an examination of the decision in TylerPipe Industries, Inc. v. Washington Department of Revenue,483 US 232, 107 S Ct 2810, 97 L Ed 2d 199 (1987). That decision did talk of establishing or expanding a market. However, that discussion was part of an analysis that led to the conclusion that independent contractor status had no significance for purposes of aconstitutional nexus analysis. Tyler Pipe did not involve or address the construction of Pub L No 86-272 and therefore cannot be read as *Page 16 
providing a limited and definitive exposition of activities that cause a loss of the protections of that federal statute.
Even if only "business activity" is to be considered, it is necessary to give the terms their ordinary meaning. The court has no difficulty concluding that when Kohler caused its employees to go to Oregon and do work, the work they did was a business activity within the ordinary meaning of those terms.
Indeed, there are several aspects of this business activity. First, Kohler can be seen as conducting its own business for the simple reason that a non-trivial number of Kohler products are sold by taxpayer. There is no question that the activities of the Kohler employees help taxpayer do its business, a part of which is the sale of Kohler produces. Second, Kohler can be seen as helping taxpayer conduct taxpayer's separate business by "seconding" to taxpayer the services of certain Kohler employees. This help is not altruistic, as Kohler has an economic interest in taxpayer's success. In this regard it is well to consider that a sale of the stock of taxpayer by Kohler would, without question, produce business income for Kohler for the reason that the two companies are unitary in character. See Allied-Signal, Inc. v. Director,Division of Taxation,504 US 768, 782, 112 S Ct 2251, 119 L Ed 2d 533 (1992). Activities obviously undertaken to enhance the "business" value of an affiliate must be considered "business activities."
Furthermore, there has been no showing by Kohler that it did not deduct for income tax purposes the wages and expenses of its employees in getting to and operating within Oregon. Absent such a showing the court must assume that such items were deducted as ordinary and necessary business expenses. *Page 17 
For any one of these reasons or by reason of any combination of them, the activities of the Kohler employees in Oregon must be considered business activities.
D. Taxpayer's Unitary Oversight Activity Argument
Taxpayer next characterizes the activities of the Kohler employees as "unitary oversight activities," and proceeds to argue that, as such, they are not to be considered in the Pub L No 86-272 analysis. (Ptfs' Resp at 34-35.)
The argument of taxpayer that "unitary oversight activities" do not count under Pub L No 86-272, once again runs squarely into the problem of the wording of Pub L No 86-272 itself. There is nothing in the legislative history or language of Pub L No 86-272 that supports the notion that some census of activities, described as involved with oversight of affiliates that are members of the same state law unitary group, are to be added to the specific list of "exempt" activities allowed under Pub L No 86-272. Indeed, as pointed out above with respect to the use of independent contractors, there is also nothing in the statute that would serve as a standard or test for what is, and what is not, a unitary oversight activity.
Nor is there anything in the cases decided under Pub L No 86-272 that supports such a point. There is no federal case law drawing such a distinction. Looking only at Oregon law on the treatment of unitary groups, there is no statutory or case law support for the argument that Oregon will ignore "unitary oversight activities" of an out-of-state person undertaken in Oregon in determining whether the out-of-state person is subject to a fairly apportioned income or excise tax. It is true that ORS 317.715(3)(b), quoted above, prevents consideration of certain features of unitary affiliates for some purposes. For example, there cannot be attributed to a parent company the jurisdiction creating activities of a subsidiary. However, ORS 317.715(3)(b) does not require, or permit, the court to ignore thedirect actions of the parent company in determining *Page 18 
whether the parent has come within the reach of Oregon's excise tax statutes or placed itself outside the scope of the protection afforded by Pub L No 86-272.
Taxpayer's unitary oversight argument must be rejected.
E. Taxpayer's Throw-back Argument
The final argument of taxpayer as to the activities that Kohler employees conducted in Oregon is that Oregon cannot consider those activities as subjecting Kohler to taxation because, if an Oregon corporation were to engage in only such activities in a sister state, Oregon would "throw-back" and treat as Oregon sales the sales made by the Oregon corporation in that sister state. (Ptfs' Resp at 36.) Taxpayer first argues that the "throw-back" rule is not premised on the number of contacts with a state, but rather with the nature of the contacts. Taxpayer returns to the argument that activities that do not relate to establishing or maintaining an Oregon market are not to be considered. From this premise, taxpayer argues that the Kohler employee activities did not serve to establish or maintain an Oregon market for Kohler products. Taxpayer then asserts that such activities would not lead to jurisdiction in a sister state under the "throw-back" rule and therefore cannot lead to jurisdiction directly in Oregon. (Ptfs' Resp at 38.) This argument, premised as it is on the argument about establishing or maintaining a market, must be rejected here just as it was above.
Taxpayer also argues that under "throw-back" rules promulgated by the department, a taxpayer with exactly the same facts as are present in this case would, under the department's rules but inconsistently, be found by the department not be subject to tax in a sister state.[13] *Page 19 
As that result would be in favor of the revenue of Oregon, taxpayer argues that the department may not have it both ways and therefore taxpayer must win here, at a cost to the revenue of Oregon. Id.
The court cannot resolve this case by speculating as to what the outcome would be in some other hypothetical set of circumstances. The court must, as it has, address the law as it applies to the facts of this case. That said, if a case were to arise in which an Oregon seller had, in a sister state, the same number and type of activities as Kohler has in Oregon in this case, this court would conclude that the Oregon seller was subject to taxation in the sister state and accordingly would not allow the department to "throw-back" to Oregon sales made in that sister state. The department might argue from its rule as to the proper outcome. That rule would not, however, be the last word.
 V. CONCLUSION
The conclusion of the court is that, solely on the basis of the activities of the distributors and ASRs, Kohler is subject to tax in Oregon such that its payroll and sales numbers must be included in the numerator of the property and payroll apportionment factors for the consolidated Oregon corporation excise tax return. In addition, if the other activities of Kohler employees in Oregon are considered, they alone justify the conclusion that Kohler does not have, in Oregon, the protection of Pub L No 86-272 for the years in question and is subject to taxation in Oregon. *Page 20 
Now, therefore,
IT IS ORDERED that the motion of Defendant is granted; and
IT IS FURTHER ORDERED that the cross-motion of Plaintiffs is denied. Costs to neither party.
Dated this ___ day of November, 2011.
Henry C. Breithaupt
Judge
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPTON NOVEMBER 29, 2011, AND FILED THE SAME DAY. THIS IS A PUBLISHEDDOCUMENT.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2003 edition.
[2] Pub L No 86-272 states, in pertinent part:
 "No State * * * shall have power to impose, * * * a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:
 "(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and
 "(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1)."
All references to the United States Code (USC) are to the 2000 edition.
[3] ORS 317.018 provides in relevant part: "It is the intent of the Legislative Assembly * * * [t]o make the Oregon corporate excise tax law, insofar as it relates to the measurement of taxable income, identical to the provisions of the federal Internal Revenue Code * * * to the end that taxable income of a corporation for Oregon purposes is the same as it is for federal income tax purposes, subject to Oregon's jurisdiction to tax, and subject to the additions, subtractions, adjustments and modifications contained in this chapter."
[4] This importance is recognized not only as to substantive matters but also as to the very processes by which resolution of disputes is accomplished. Levin v. Commerce Energy, Inc., ___ US ___,130 S Ct 2323, 176 L Ed 2d 1131 (2010).
[5] The United States Supreme Court acknowledged this constructional rule in Wisconsin Department of Revenue v. WrigleyCo., 505 US 214, 112 S Ct 2447, 120 L Ed 2d 174 (1992). However, because that case involved the meaning of a term actually used in Pub L No 86-272, the court proceeded with determining the meaning of the term, "solicitation," by ordinary methods without regard to any constructional preference. In this case, given the assumption that this court makes as to the status of certain actors, no term or word in Pub L No 86-272 is at issue.
[6] Taxpayer's discussion of the independent contractor issue is somewhat confusing. Taxpayer may be arguing that, if the distributors and ASRs are independent contractors, then Kohler is not doing business in Oregon through them. Alternatively, taxpayer may be arguing that, if those actors are independent contractors, their actions are somehow protected by Pub L No 86-272. As to the first possible argument, as has been said, the Oregon legislative reach is to be interpreted as being to the constitutional limit, and the use of independent contractors does not make a constitutional difference. See Scripto,Inc. v. Carson, 362 US 207, 80 S Ct 619, 4 L Ed 2d 660 (1960);Tyler Pipe Industries, Inc. v. Washington State Department ofRevenue, 483 US 232, 107 S Ct 2810, 97 L Ed 2d 199 (1987). The second possible argument, relating to Pub L No 86-272, is the subject of this section of the opinion of the court.
[7] A review of the briefs filed in Herff Jones and recollection of the scope of review then applicable is helpful. In its brief to the Oregon Supreme Court, Plaintiff's first proposition of law was that this court had erroneously concluded that the representatives of Plaintiff were employees. Taxpayer here tries to infer from the fact that the Supreme Court first discussed the employee/independent contractor question that it has some special significance. Not so. In fact the Supreme Court was simply taking the propositions in the order presented and deciding the case anew upon the record. That was the scope and standard of review for the Supreme Court. ORS 305.445 (1961). And, of course, as the Supreme Court found the actors to be employees, there was no occasion for the court to discuss what would have been the analysis if they had been found to be independent contractors. Most importantly, nothing in Herff Jones suggests that there is any relevant relationship in Pub L No 86-272 other than that of employee, representative or independent contractor.
[8] The word "extreme" is used here not in the pejorative sense in which it is so often employed, but only to connote a position near or at the end of a spectrum.
[9] A taxpayer can avail itself of the economic milieu in a state through independent contractor relationships. After all, the state supports the existence of the contractor and provides the judicial mechanisms for enforcement of the contract itself. In addition, the contractor, as here, itself needs customers in this state for whom the contractor performs services and through such work produces benefits for itself and its principal. Those customers exist in a society and engage in personal or business activities that give rise for the need of the services of the contractor. That society and those activities all exist within a context of physical, economic and legal infrastructure made possible, in part, by the government of the state, funded as it is by the tax collections of the state.
[10] Scripto concerned itself only with the constitutional question — whether sufficient nexus to create jurisdiction to tax existed between the state of Florida and the sales activities of a Georgia-based vendor employing independent contractors to solicit sales in Florida. In that case the court found that from a purely constitutional standpoint, the status of the in-state solicitors as independent contractors made no difference. On the other hand, inWrigley, the court found that an in-state sales representative's status as employee or independent contractor clearly does make some difference for purposes of Pub L No 86-272. For reasons that will be discussed below, however, the activities undertaken by taxpayer's distributors and ASRs do not fall within the safe haven provided by Pub L No 86-272.
[11] And, at least, on the facts of this case.
[12] The court will not address the argument the department makes as to Pub L No 86-272 disqualification by reason of the asserted presence within Oregon of certain property of Kohler, namely replaced parts that the distributors and ASRs hold for redelivery to Kohler.
[13] The rule in question is OAR 150-314.665(2)-(A)(2004.)